GENERAL ELECTRIC CO. OF NEW YORK v. WHITNEY et al.

WHITNEY et al. v. GENERAL ELECTRIC CO. OF NEW YORK et al.

(Circuit Court of Appeals, Fifth Circuit. April 21, 1896.)

No. 465.

1. RECEIVERS—ADOPTION OF CONTRACTS.

When a court of equity takes control, through a receiver, of a trust estate, in proceedings based on the insolvency and fraudulent management thereof, it is not more bound than in the case of proceedings for the foreclosure of liens to carry out all the contracts of the insolvents. No executory contract is binding on the receiver until adopted by him, and it is the duty of the receiver to refuse to adopt such a contract which would prove so burdensome as to imperil the fund.

2. SAME.

The L. Electric Co. had a contract with the city of N. O. for lighting the streets, under which the city paid it $15,000 a month. In consideration of advances, the L. Co. pledged and assigned to the G. Co. the payments to become due from the city for several months in advance. Thereafter, and before such payments had all become due, receivers of the L. Co. were appointed, in a stockholder's suit, upon allegations of mismanagement of the corporation, and were directed to continue its business. It appeared that, if the payments from the city were not made to the receivers, the income from the business would be insufficient to pay its operating expenses. The court, upon petition of the receivers, enjoined the city from paying to the pledgees the sums accruing after the appointment of the receivers, and directed it to pay all sums thereafter accruing . to the receivers or their successors. *Held* no error.

Appeal and Cross Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

E. Howard McCaleb and Thos. J. Semmes, for Electric Co.

Branch K. Miller, for appellee Louisiana National Bank.

Fenner, Henderson & Fenner, Saunders & Miller, and Rouse & Grant, for Whitney and others.

Before McCORMICK, Circuit Judge, and BOARMAN and SPEER, District Judges.

McCORMICK, Circuit Judge. The Louisiana Electric Light Company was chartered under the laws of the state of Louisiana in 1889. Its charter provided:

"All the corporate powers of said corporation shall be vested in a board of directors, without the necessity of any authorization or ratification whatever of their action by the stockholders."

The capital stock was fixed at the sum of $500,000, to be represented by 5,000 shares of $100 each. On June 24, 1890, the corporation made its mortgage to the Loan & Trust Company to secure its first mortgage bonds, in the sum of $700,000, and on December 1, 1892, made its mortgage to the New York Guarantee & Indemnity

Company to secure what it called its "consolidated first mortgage gold bonds," in the sum of $2,000,000. It made a contract with the city of New Orleans to light the streets and public buildings at a specified price for each light, the aggregate of which now amounts to approximately $15,000 a month, payable monthly on the 9th day of the month following that on which the service is rendered. It also furnishes light to private consumers, and power to street-car lines and to other persons, from which its gross earnings aggregate approximately $21,000 a month, making, in all, monthly gross earnings of about $36,000. Its current monthly cost of operation, including necessary temporary repairs and betterments, is about $30,000.

On June 7, 1895, the United Electric Securities Company, a citizen of Maine, exhibited its bill to one of the judges of the circuit court, against the Louisiana Electric Light Company and its directors, showing that the complainant was the owner of 2,125 shares of the capital stock of the Louisiana Electric Light Company and of $435,000 of the $700,000 of its first mortgage bonds, and making such allegations as to its condition and control as, in the view of the complainant, required the interposition of the court and the appointment of a receiver. The court ordered that the defendants named in the bill should show cause on the 13th of June why the receiver prayed for should not be appointed; and that, in the meantime, the officers, agents, and servants of the Louisiana Electric Light Company should be restrained from disposing of or in anywise incumbering its property, otherwise than in the due course of business, and enjoining them to hold the property safely subject to the further order of the court. After the hearing set for the 13th of June, the circuit court declined to appoint a receiver at that time, but retained the bill, with leave to complainant to amend, and issued its injunction controlling and directing the action of the president and directors of the defendant company, and decreeing that the property of the company should be retained in the custody of the court until further orders should be made in the premises. After other proceedings not material on this appeal, the cause came on to be further heard on November 15, 1895, when the court appointed receivers, with the usual powers of receivers in like cases, who immediately qualified and took possession of the property and control of its operation. On November 30th the receivers presented their petition to the court, showing, among other things, that the late officers and directors of the Louisiana Electric Light Company have executed certain pretended acts of pledge, whereby they have undertaken to pledge to certain alleged creditors of the corporation the revenues to be earned by the Louisiana Electric Light Company under its contract with the city of New Orleans for the months of November, December, January, and February, to the full extent of $15,000, and for the month of March to the extent of $6,000, and have executed pretended transfers and assignments of the revenues in execution of the pledge, of which transfers and assignments the city of New Orleans has been notified; that unless restrained it will pay over to the transferees the amounts so to become due by it; that, if the rev-

enues from the city of New Orleans are thus diverted, the revenues derived from the business of the Louisiana Electric Light Company will be totally insufficient to pay the operating expenses, and petitioners, having no other means applicable to such purposes, will be entirely unable to comply with the order of court directing them to continue the operation of the business,—and praying that the city of New Orleans be cited to appear and show cause why it should not be enjoined and restrained from paying any sums which may become due under its lighting contract with the Louisiana Electric Light Company to any pledgees or transferees claiming the same, or to any persons other than petitioners, until the rights of such third persons have been duly recognized by the court, or until the further order of the court, and praying for a restraining order until such hearing, and for all further proper orders and relief in the premises. Thereupon the court ordered that the city of New Orleans and its proper officers should be cited to show cause on the 6th of December why it should not be enjoined and restrained from paying any sums that should become due under its lighting contract with the Louisiana Electric Light Company to any pledgees or transferees claiming the same, or to any persons other than the receivers, until the claims of such persons have been presented to the court and recognized, and restraining them from so doing in the meantime.

The city having answered the rule to show cause, and other parties having intervened, the court ordered that the injunction prayed for be modified so as to exclude from its operation the amount earned under the city lighting contract prior to the appointment of receivers on the 15th of November, 1895, authorizing the city to pay over to the pledgees one-half the amount due for lighting during the month of November, and decreed that the city of New Orleans, its officers, agents, and employés, be enjoined and restrained from paying any sums due or to become due under its lighting contract with the city of New Orleans to any pledgees or transferees claiming the same, or to any persons other than the receivers, until the further order of the court, saving and excepting one-half the amount due for the month of November, 1895. And the court further ordered that the receivers amend their petition by making the General Electric Company and the Louisiana National Bank and any other persons of record as holders of any pledges or transfers of said earnings, parties, and that said parties enter appearance and file answers within five days from date of service on them, and setting the cause down for hearing on January 4, 1896. By proof taken before a master it was shown that the appellant had made advances to the Louisiana Electric Light Company aggregating the sum of $61,000, to secure which that company had, by an instrument dated June 3, 1895, pledged $149,000 of its mortgage bonds, and had attempted to pledge the revenues accruing to the Louisiana Electric Light Company from the city of New Orleans, La., under the contract between the said lighting company and the city of New Orleans, La., for the months of September, October, and November, 1895, and January, February, and March, 1896, formal transfers of which were executed and de-

livered contemporaneously with the execution of the instrument of pledge. After full hearing a decree was passed January 18, 1896, by which it was—

"Ordered that the said city of New Orleans do pay to George Q. Whitney and A. S. Badger, receivers in this cause, the full amount earned and due under said contract for the month of December, 1895, and also the amounts to become due for the months of January, February, and March, 1896, when earned, and that the said city do recognize the right of said receivers or their successors, if any are appointed, to claim and enjoy the full benefit of said contract in the same manner and to the same extent as the Louisiana Electric Light Company might if such receivers had not been appointed. Otherwise than as herein maintained, the injunction pendente lite is dissolved."

From this decree the General Electric Company appealed, and the receivers by leave took a cross appeal.

There is no error in the decree appealed from of which the appellant or the cross appellants can complain. The contract to light the city has no vital connection with the subsequent contract touching the disposition of the revenues. The subject of the second contract could not exist until, and only as far as, there was performance of the first. The parties are different, and the purposes akin in no degree. So far as is material to this litigation, both contracts were executory at the time of the appointment of the receivers, and the execution of the first might be necessary to the protection of the trust estate, while the execution of the second might prove destructive to the estate. The question, therefore, readily resolves itself into this: Did the circuit court acquire jurisdiction in the cause, by the original, supplemental, and amended bills of complaint, to take the custody of the property and the management of the affairs of the defendant corporation, and appoint receivers to hold and exercise such custody and control? There is no suggestion of the want of such jurisdiction. It was the duty of the receivers to use all reasonable efforts to carry out and perform the beneficial contract, and it was also their duty to refuse to adopt an executory contract which they found would prove so burdensome as to imperil the fund. Such a contract was not binding on the receivers until renounced by them, but, on the contrary, was not binding on them at all until adopted by them, and such adoption, however expressed, would not deprive the court of power and discretion to stop the further performance of such a contract.

It is contended that there is a marked distinction between the powers and duties of the court and its receivers in proceedings where no foreclosure of liens is sought and in proceedings for foreclosure; that in the former case, which was this case up to the passing of the decree we are reviewing, the property and affairs of the insolvent and mismanaged corporation must be taken hold of by the court, if at all, with all its burdens. If by this is meant only that all existing liens on, or vested rights in, property must be respected and enforced, the distinction disappears; for in all proceedings a court of equity respects vested rights in property and enforces the existing liens thereon. If, however, it is meant that in such proceedings as do not seek foreclosure, and are founded on the insol-

vency and fraudulent management of a trust estate, the court of chancery cannot take hold of that estate except on the condition of carrying out all of the valid contracts of the insolvent, we are constrained to say that the marks pointing to that conclusion are not legible to us, and we repeat the suggestion that such a contention leads to the denial of the jurisdiction of the court to administer such estate. A distinction, not clearly marked or defined, is referred to in the reported opinions of eminent judges, and does exist. It was duly recognized by the circuit court in this case in the caution exercised on the exhibition of the complainants' original bill, in the effort to prevent the insolvency of the trust estate by controlling the trustee and preventing fraudulent mismanagement through the process of injunction. When it was made to appear that this remedy would not reach the evil condition, the receivership had to be tried or the case abandoned. It cannot be contended that the court should be required to operate the property without funds to meet its necessary running expenses, for the physical impossibility involved is the patent answer to such a contention. On sufficient proof the circuit court has found that the operation of the business of the Louisiana Electric Light Company has been carried on by the receivers, and will continue to be carried on, at a loss to the receivers of about $9,000 a month, unless they are permitted to collect and receive the revenues earned under the contract with the city of New Orleans. We cannot, by reasoning, add to the support which the plain statement of the facts of the case gives to that part of the decree of which the appellant complains.

The cross appeal of the receivers cannot be sustained, because, while neither the appellant nor the Louisiana Bank showed any right in law or equity to demand immediate payment to any extent out of any of the current earnings of the receivers, each did show that its advances were made at a time, and put to such uses, that the court, in the exercise of a sound discretion, might permit them, respectively, to receive the payment the decree allows, without thereby doing any injustice to other creditors.

The decree of the circuit court will be affirmed, at the cost of the appellant, and it is so ordered.