KANSAS CITY PIPE LINE CO. et al. v. FIDELITY TITLE & TRUST CO. et al. (three cases). LANDON et al. v. KANSAS NATURAL GAS CO. et al. SAME v. McPHERSON, District Judge.

(Circuit Court of Appeals, Eighth Circuit. August 20, 1914.)

Nos. 4179, 4195, 4196, 4202, 143.

1. COURTS (§ 489*)—FEDERAL AND STATE COURTS—CONFLICT OF JURISDICTION —RECEIVERS.

The state of Kansas commenced a suit against the Kansas Natural Gas Company, a Delaware corporation doing business in the state, to enforce its anti-trust laws. Pending the suit receivers were appointed by the federal court in a foreclosure suit for all of the property of the company situated in Kansas, Oklahoma, and Missouri, under Judicial Code (Act March 3, 1911, c. 231) § 56, 36 Stat. 1102 (U. S. Comp. St. 1913, § 1038). As the result of the hearing receivers were also afterward appointed by the state court for the property of the company in Kansas, and on their application such property was turned over to them by the federal receivers by order of the court. The Kansas City Pipe Line Company, organized as an auxiliary of the gas company, had leased all of its property, consisting of pipe lines, to the gas company and was a large creditor for rentals. It also had a mortgage on its property, and the gas company had two mortgages securing outstanding bonds, in all aggregating $13,000,000. The pipe line company, and also its mortgagee, were

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

brought into the state suit, and a receiver for the pipe line company appointed therein. The receivers for both companies and the gas company itself applied to the federal court to have all of the property of such company, including money in the hands of the receivers, turned over to its state receivers, which was opposed only by the pipe line company and its mortgagee. The property of the gas company consisted of gas wells owned and leased in Kansas and Oklahoma and pipe lines extending therefrom through Kansas and into Missouri, and its business was the supplying of gas, for the most part through local companies, for the use of about 40 cities and towns in those two states, from which a large revenue was collected by the federal receivers, and all parties agreed that, in order to conserve the property, all that in the three states must be kept and operated together. *Held,* that the mere pendency of the suit in the state court did not deprive the federal court of jurisdiction to appoint receivers at suit of the mortgagee, but that because of the nature of the suit in the state court its receivers, when appointed, had the better right to possession of the property within the state, and that as all parties in interest, except the pipe line company and its mortgage trustee, desired it, and the necessity for a common control and management of the entire property was apparent, it was within the power of the federal court to turn over possession of all of the property and money in the hands of its receivers to the state receivers, subject to all lawful liens arising by virtue of its own receivership, retaining jurisdiction of the suit until that in the state court was disposed of.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*

Conflict of jurisdiction with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

2. RECEIVERS (§ 91*)—ADOPTION OF LEASE.

Where an order appointing receivers provided that contracts and leases should not be taken as adopted without the express action of the court, the fact that they continued to use leased property did not bind them as an adoption of the lease, the court not having been asked to adopt or disaffirm it, so as to make the rental called for by the lease an operating expense of the receivership and a lien on the property and its income.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 167, 168; Dec. Dig. § 91.*]

Appeals from the District Court of the United States for the District of Kansas; Smith McPherson, Judge.

Suit in equity by the Fidelity Title & Trust Company, trustee, and John L. McKinney, against the Kansas Natural Gas Company. From certain orders made by the District Court, the Kansas City Pipe Line Company and the Fidelity Trust Company and also John M. Landon and R. S. Litchfield, as receivers, separately appeal. Petition of John M. Landon and R. S. Litchfield, as receivers, for a writ of mandamus against Hon. Smith McPherson, as assigned Judge of the District Court for the District of Kansas, First Division. Orders appealed from modified and affirmed. Petition for mandamus denied.

See, also, 209 Fed. 300, 126 C. C. A. 226.

J. W. Dana and W. C. Scarritt, both of Kansas City, Mo. (E. L. Scarritt, E. S. North, and A. M. Seddon, all of Kansas City, Mo., on the briefs), for appellants Kansas City Pipe Line Co. and Fidelity Trust Co.

John S. Dawson, Atty. Gen., of Kansas, Chester I. Long, of Wichita, Kan., and John H. Atwood, of Kansas City, Mo. (O. P. Ergenbright

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and T. S. Salathiel, both of Independence, Kan., on the brief), for appellants Landon and Litchfield.

Charles Blood Smith, of Topeka, Kan. (Samuel Barnum, of Topeka, Kan., on the brief), for appellees Fidelity Title & Trust Co. and McKinney.

Samuel S. Mehard, Cornelius D. Scully, and Churchill B. Mehard, all of Pittsburgh, Pa., filed a brief by leave of court on behalf of the protective committee of holders of second mortgage bonds of the Kansas Natural Gas Co.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. These are appeals from orders of the District Court of the United States for the District of Kansas made in the adjustment of a conflict of jurisdiction between it and a state court. On January 5, 1912, the state of Kansas brought an action against the Kansas Natural Gas Company and others in the district court of Montgomery county in that state to enforce its anti-trust laws. The company is a Delaware corporation, with business headquarters in Montgomery county. The hearing of the action began September 30, 1912, but before its conclusion and on October 7th McKinney, a creditor holding second mortgage bonds, filed a creditor's bill against the company in the court below and caused receivers of its property to be appointed. October 19th the Fidelity Title & Trust Company, trustee in the first mortgage of the defendant company, was made a party plaintiff. Shortly afterwards the trustee filed an independent bill in foreclosure. For convenience these suits will be referred to as the foreclosure suit. By proceeding under section 56 of the Judicial Code jurisdiction was taken by the court below of the company's property in Missouri and Oklahoma. On February 15, 1913, the state court concluded its consideration of the action before it and rendered judgment against the company, appointing receivers of its property in Kansas, directing them in conjunction with the Attorney General to appear in the court below and urge the prior jurisdiction of the state court and the rights of the state of Kansas, making the Kansas City Pipe Line Company a party defendant and restraining it from litigating elsewhere any matter of its contract with the Kansas Natural Gas Company. February 18, 1913, the Attorney General and the state receivers appeared in the court below and applied for possession. It was held, June 5, 1913, they should prevail. 206 Fed. 772. On appeal to this court the order was affirmed. 126 C. C. A. 226; 209 Fed. 300.

The order directed the federal receivers to surrender all the property in Kansas to the state receivers and retained the matter for future directions respecting certain conflicting relations and the moneys on hand from the operation of the business. The mandate of this court was spread on the records of the court below December 30, 1913, and the physical property of the company in Kansas, both owned and leased, was accordingly turned over to the state receivers. There was also paid them the sum of $75,000. The federal receivers re-

tained subject to further directions of the court below approximately $1,000,000, including live credits which were shortly thereafter collected. Payments upon the funded debt and certain other obligations of the Kansas Natural Gas Company having been stopped, this amount in the hands of the federal receivers was materially increased by further receipts of the business. While the above proceedings were in course, other things occurred which have a bearing on the controversies here. On March 11, 1913, the Fidelity Trust Company, the mortgage trustee of the Kansas City Pipe Line Company, was made a defendant in the action in the state court, and the restraining order mentioned was extended to it. On June 21, 1913, the state court appointed a receiver of the Pipe Line Company. December 6, 1913, the insolvency of the Kansas Natural Gas Company, confessed by it in the foreclosure suit in the court below, was made an additional ground for the state receivership.

[1] The appeals now before us were taken from subsequent orders of the court below by the state receivers and by the pipe line company and its mortgage trustee, who had appeared as interveners. On January 23, 1914, the state receivers moved the court below to order its receivers to pay over to them all moneys then or thereafter in possession in virtue of the federal receivership. The Kansas Natural Gas Company, from the operation of whose property, owned and leased, the moneys came, asked that the motion be granted. The state receiver of the pipe line company also desired the moneys paid over subject to any liens and claims of that company or of himself as its receiver. As will be presently explained, the pipe line company owned extensive properties which by lease and contract had become embraced in the system operated by the Kansas Natural Gas Company. On January 24, 1914, the court below ordered its receivers to deliver to the state receivers the property of the Kansas Natural Gas Company in Missouri and Oklahoma to be returned by the latter at the end of their custody and operation of the property in Kansas, also, excepting a reservation not important here, to pay over to the state receivers all moneys then or thereafter in hand subject to all liens and claims with right to assert them in the state court. The state court thereupon directed its receivers to accept and receipt for the property and moneys upon the terms of the order of the court below. The pipe line company and its mortgage trustee appealed. Cause No. 4179.

On February 6, 1914, the court below modified the order of January 24th by limiting the amount of money to be paid over to $600,-000. On March 12th the remaining federal receiver, the others having resigned, was ordered by the court below to continue collecting for all gas theretofore or thereafter sold to purchasers or consumers in St. Joseph, Kansas City, Joplin, and elsewhere in Missouri. From these sources a large part of the income from the entire business was derived. The Attorney General of the state and the state receivers renewed their earlier application for the moneys and complained of the orders of February 6th and March 12th as violative of the mandate of this court, and also because the federal receiver was allowed to collect for gas which he neither produced, bought, nor paid for,

but all of which was acquired, transported, and delivered by the state receivers. The application was denied March 23, 1914, except that the federal receiver was directed to pay the state receivers an additional $100,000; the order reciting:

"Which said money is paid for the express purpose, and for none other, to enable the state receivers of the district court of Montgomery county, Kan., to operate the entire property and to furnish a gas supply to patrons and consumers at St. Joseph, Mo., Kansas City, Mo., Joplin, Mo., and other places in the state of Missouri and subject to the right of the state court receivers to make further applications for money for said purposes."

The state receivers appealed from the order except as to the payment of the money. Cause No. 4195. The pipe line company and its mortgage trustee appealed from that part of the order directing the payment of the money. Cause No. 4196. Afterwards the pipe line company and its mortgage trustee prosecuted a further appeal from the orders of January 24th and March 23d (Cause No. 4202), and the state receivers applied for a writ of mandamus to require the judge of the court below to observe the mandate of this court (Cause No. 143, original).

A brief description of the property and business of the Kansas Natural Gas Company and the relation of the pipe line company thereto and its place in this litigation will assist the understanding of the controversies before us. The Kansas Natural Gas Company was engaged in the production, purchase, transportation by pipe lines, and marketing of natural gas. It supplied gas for lighting, heating, and manufacturing purposes in about 40 cities and towns in Kansas and Missouri. Its system of pipe lines, including those leased from other companies, extends from the Hogshooter gas field in Oklahoma, through eastern Kansas and across the Missouri river above Leavenworth, to St. Joseph, Mo., a distance of about 250 miles, with various branches therefrom, to Joplin, in southwestern Missouri, and the cities and towns in that neighborhood, to Kansas City, Mo., and Kansas City, Kan., and to Lawrence, Topeka, Leavenworth, and Atchison, Kan. Some of the gas is still obtained from wells in Kansas, but most of it from wells in Oklahoma. Much the larger part of the pipe line system is in Kansas; the lines into Missouri, particularly at Kansas City, being short in comparison. All the gas for the Missouri cities and towns goes through trunk pipe lines in Kansas. Gas for the larger cities in both Kansas and Missouri is generally sold to local companies formerly in the artificial gas business and is distributed by them to consumers.

Because of the nature of the natural gas business, the necessity of shifting the pipe lines and compressor plants to reach new sources of supply as gas wells give out, the physical interconnection of the various pipe lines owned and leased, the fact that the principal source of supply is in Oklahoma, while a large proportion of the sales is in Missouri, and most of the trunk lines are in Kansas, all agree that the system operated by the Kansas Natural Gas Company should be regarded as an integral indivisible unit. Both the court below and the state court so found in express terms. The federal receivers and the

state receivers have so represented, and the parties to the litigation by their respective counsel so state. Counsel for the pipe line company and its mortgage trustee, two of the appellants here, express the situation as follows:

"And it seems to be a conceded fact that the dismemberment of this system by segregating the parts in the different states, or by taking from it the fixed properties of the Kansas City Pipe Line Company, would wholly disable the entire system, confiscate the values of the several parts, and deprive a million people of a prime necessity of life."

Counsel for the protective committee of holders of the second mortgage bonds of the Kansas Natural Gas Company say that:

"A perpetuation of the dual receivership of the Kansas Natural Gas Company would wreck the property. * * * Interests of all parties concerned can best be served by making the management of the Kansas receivers exclusive over all the property, including money, now in the hands of the court or of the federal receivers."

Counsel for the other parties are hardly less positive.

About 35 per cent. of the pipe line system operated by the Kansas Natural Gas Company and a substantial part of the compressor plants and appliances necessary for its operation belong to the pipe line company. It owns the double line extending from Olathe, Kan., a short distance into Missouri at Kansas City, and the contracts with the local distributing companies of Kansas City, Kan., and Kansas City, Mo., are in its name. It also owns a trunk line closely paralleling one of the Kansas Natural Gas Company from Olathe to the northeastern part of Wilson county, Kan., and the double trunk line thence to Grabham in Montgomery county. The cities and towns in southern Kansas east of Montgomery county and those in southwestern Missouri are served through lines owned by the Kansas Natural Gas Company, as also are Topeka, Lawrence, Leavenworth, and Atchison, Kan., and St. Joseph, Mo. The lines of the Kansas Natural Gas Company extend but a short distance into Oklahoma. They connect there with the lines held under lease from another company, for which the state court has also appointed a receiver. To the southern end of these lines have been attached between 15 and 20 miles of pipe belonging to the pipe line company, removed there from Kansas.

The Kansas Natural Gas Company was organized in 1904. It has a capital stock of $12,000,000. June 20, 1904, it issued $4,000,000 of first mortgage bonds, and on March 1, 1906, an equal amount of second mortgage bonds. Both mortgages contain sinking fund provisions for the retirement of the bonds in annual installments in 12 years from their dates, respectively. The pipe line company, though having an independent corporate origin, was organized as an auxiliary of the Kansas Natural Gas Company. The latter owns one-half of its capital stock of $5,000,000. On August 1, 1907, the pipe line company issued $4,745,000 of mortgage bonds maturing annually in series, the last in 1918. The Fidelity Trust Company, one of the appellants, is the trustee in the mortgage. After the appointment of the federal receivers of the Kansas Natural Gas Company October 9, 1912, default was made in interest, sinking fund, and principal installments of the bonds of both companies.

On January 1, 1908, the pipe line company and the Kansas Natural Gas Company entered into a contract, termed a lease, whereby the former granted and leased to the latter, for 99 years from February 2, 1906, all its properties, franchises, and rights of every kind and description excepting its franchise to be a corporation, its corporate seal, office furniture, records, and muniments of title. Even the right to use its name in business and litigation was given. On its part the Kansas Natural Gas Company contracted to pay (1) all taxes and public charges upon the leased property, franchises, and rights, upon the bonds of the pipe line company, which it was required to pay or deduct, and upon dividends on its capital stock; (2) all interest upon the bonds issued by the pipe line company; (3) the annual requirements of the sinking fund to redeem the bonds; (4) a sum sufficient to enable the pipe line company to pay dividends of 6 per cent. on its capital stock; (5) the actual expense of maintaining the corporate organization of the pipe line company and of providing suitable offices for its officers and directors, not exceeding $500 per annum. In addition the Kansas Natural Gas Company assumed all outstanding obligations and liabilities, absolute and contingent, of the pipe line company. On January 1, 1913, the pipe line company asked leave of the court below to file an intervening petition in the foreclosure suit. With leave afterwards granted it filed a petition March 24, 1913, in which it appeared specially for the assertion of its rights under the lease, but otherwise denied the jurisdiction of the court over it. On January 24, 1914, its mortgage trustee, to whom the bond and interest sums were payable under the lease, joined it in an amended and supplemental intervening petition, claiming an adoption of the lease by the federal receivers and that by its terms there was then due $1,-276,187.16. It was also averred that the first intervening petition was filed to give notice of a claim under the lease and to avoid an implication of a contract to accept compensation on the basis of quantum meruit. This amended and supplemental petition has not been determined by the court below. The amount claimed has since materially increased by the accrual of other sums under the lease. Large amounts are also due and unpaid on account of the first and second mortgage bonds of the Kansas Natural Gas Company.

The questions presented by the appeals before us are, in short: What should be done with the money, and the property in Missouri and Oklahoma, in the custody of the federal receiver? What should be done with the claims of the pipe line company? The pipe line company objects to the payment of any money or the further surrender of property to the state receivers until its demands under the lease are satisfied. Its position is that the court below had jurisdiction of all the property owned and leased by the Kansas Natural Gas Company until the part in Kansas was surrendered; that the federal receivers were rightfully in possession of and operating it; that the remaining federal receiver still has the property in Missouri and Oklahoma; that the state court has no jurisdiction outside of Kansas, and its receivers can exercise no authority beyond the borders of that state; that the property in Missouri and Oklahoma cannot be

lawfully surrendered to them; that much of the money now held by the federal receiver comes from the operation of the entire system before the property in Kansas was given up, and since then from the operation in Missouri and Oklahoma; that the lease of the property of the pipe line company was adopted by the federal receivers, and the sums due under it are an administrative or operating expense of the receivership, like the compensation of the receivers or the wages of their employés, which can be determined, allowed, and paid only under the orders of the court below; and, finally, that the pipe line company has a first and prior lien upon all the money in the hands of the federal receiver and the entire property of the Kansas Natural Gas Company, superior to all other claims and liens, including the two mortgages given by the latter, though those mortgages are first in time. On the other hand, the state receivers claim that because the action in the state court was first begun the federal receivership is void from the beginning, but if not so, then, when it lost control of the property in the primary jurisdiction in Kansas, it could not continue to hold in Missouri and Oklahoma under section 56 of the Judicial Code; also that the court below had no power to, and did not, charge the money and property with the demands of the pipe line company. The essential unity of the entire system, the imperative necessity for a single management and operation, and a single control of the income are urged.

Our conclusions may be briefly stated. The mere pendency of the action in the state court was not an obstacle to the appointment of receivers by the court below. The court below had jurisdiction of the parties before it and of the subject-matter, and, were there no other reason for its action, the trustee in the first mortgage of the Kansas Natural Gas Company had a right at once to impound the income from the mortgaged property, the state court not having yet acted. There was no conflict until it acted. The jurisdiction in Kansas was properly extended to Missouri and Oklahoma. When the state court appointed receivers, their superior right to the property in Kansas then arose, because of the nature of the action there and its prior pendency. That right was not self-executing, but in the orderly administration of justice was asserted by application in the court below. These principles were fully recognized in the opinion of the state court. The court below has the right to retain the foreclosure suit and await the progress and disposition of the action in the state court, with power to make such orders and decrees as future exigencies may require. When it surrendered the property in Kansas to the state receivers, it did not thereby lose the jurisdiction in Missouri and Oklahoma obtained under section 56 of the Judicial Code. The jurisdiction of the state court is confined to Kansas, and the authority of its receivers, as such, is no longer than the arm of the court. But their authority may be enlarged by agreement of the parties in interest, when agreeable to the court that appointed them, and not contrary to the laws of the states where the property is located, nor inconsistent with a prior jurisdiction. In such case they depend on convention rather than the force of judicial process.

The necessity for a common control and management of the entire system of the Kansas Natural Gas Company appears from every point of view. It is sought by the state receivers at the instance of the state court, and is not contrary to law. The Kansas Natural Gas Company, the owner and debtor, its first mortgage bondholders, and its second mortgage bondholders, as far as they have appeared, have urged the court to accomplish it. To divide the property and operate the several parts inharmoniously would cause great loss to the proprietary companies and the holders of their securities and would seriously impair the service to the public. Nothing can result from continuing the control of the federal receiver but confusion and loss, unless he act in an auxiliary or ancillary way to the state receivers, and that is not desirable for various reasons. The money on hand should follow the property. It would not be practicable to divide that earned after the state receivers were appointed on any than an arbitrary basis. Nothing is in the way of a complete surrender of all the property and money to the state receivers, except the possession and control by the court below over the property in Missouri and Oklahoma and the claim of the pipe line company and its mortgage trustee that the sums due under the lease are an expense of the federal receivership and a first lien upon the entire estate of the Kansas Natural Gas Company and the proceeds of its operations, which the court below and no other court can determine and pay. The court below may relinquish possession and control when justice requires it.

[2] We turn to the claim of the pipe line company and its mortgage trustee. In appointing its receivers the court below reserved to itself the power to approve or disapprove leases and contracts, and none were to be taken as adopted without its express order. No such order had been made as to the lease in question. The pipe line company has never formally asked the court below to adopt or disaffirm the lease. It relies for adoption upon administrative acts of the federal receivers, but they are not sufficient in this case. It has no lien as claimed upon the entire estate by the Kansas Natural Gas Company or the income from the receivers' operation. Its claim is under the lease. It was not affirmatively created by the court below or its receivers, and as asserted its relation to the usual, ordinary charges and costs of administration is not much closer, if at all, than that of the bondholders of the Kansas Natural Gas Company. To allow the preference claimed upon the entire property and income would displace the lien of prior mortgages to some extent. We pass the fact that the state court has appointed a receiver of the pipe line company, and enjoined it and its mortgage trustee from appearing in any other court for the determination of any matter affecting the corporate property, assets, or liabilities of the Kansas Natural Gas Company. If the case were free from complications, the court below might, under the prayer for general relief, determine the amount equitably due for the use of the leased property and order it paid before surrendering the fund. But it is not uncommon for a court to turn funds and property over to another court, subject to lawful claims to be determined by the latter. The state court has signified of record to take so

charged. That is not a recognition that any particular person has a preferential right, but a judicial acknowledgment that whatever right is found to exist will be protected. Undoubtedly the pipe line company and its bondholders have substantial equities; so have the bondholders of the Kansas Natural Gas Company. The attitude of the state court has been patient and careful. There is nothing to indicate that it would be less responsive than the courts of the United States to the obligations of contracts and the rights of those whose means have been invested in this precarious business, or more likely to allow demands for service and rates to go to the point of confiscation of private property.

The motion to dismiss in case No. 4179 is denied. The order of January 24, 1914, should be modified by making it additionally specific that the state receivers, with the express authority of the state court, accept the property and money subject to all lawful liens and claims arising under or by virtue of the receivership in the court below, or otherwise. The property in Missouri and Oklahoma and the money, less the amount of taxed costs and allowances, should be surrendered to the state receivers, upon their receipt, authorized by the state court and according to the order of January 24, 1914, as modified. As so modified, the order is affirmed. The other orders of the court below which are involved in these appeals are reversed, except so far as they direct the payment of money to the state receivers. The application for a writ of mandamus is denied, at the cost of petitioners. The matters involved in the appeals are remanded to the court below for further proceedings in conformity with this opinion.