LANDON v. PUBLIC UTILITIES COMMISSION OF KANSAS et al.

(District Court, D. Kansas, First Division. August 13, 1917.)

No. 136–N.

1. COMMERCE ⬤⟿15—"INTERSTATE COMMERCE"—TRANSPORTATION AND SALE OF NATURAL GAS.

The piping of natural gas from one state, where it is produced, into another state, where it is distributed to consumers, constitutes interstate commerce; and its character is not changed by the fact that the gas is stored in the latter state merely as a necessary incident to its proper and efficient transportation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. COMMERCE ⬤⟿12—VALIDITY OF STATE REGULATIONS—INTERSTATE COMMERCE.

The power of a state to control public utilities doing business within its boundaries may not be so exercised as to impose a direct burden on interstate commerce.

3. COMMERCE ⬤⟿57—INTERSTATE COMMERCE—INTERFERENCE WITH BY STATE.

The action of a state commission in assuming jurisdiction to fix and regulate rates to be charged to consumers by the receiver of a corporation engaged in piping natural gas into such state from another and distributing it to consumers *held* unconstitutional, as a direct interference with interstate commerce, and as depriving the receiver of his property without due process of law.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. RECEIVERS ⬤⇒90—ASSUMPTION OF CONTRACTS.

 A contract made by a corporation is not binding on its receiver, unless affirmatively adopted by him; and while, ordinarily, he is required to indicate his election within a reasonable time, it is not necessary, where an order has been made that the contract should not be binding on the receiver, unless expressly so ordered by the court.

In Equity. Suit by John M. Landon, receiver of the Kansas Natural Gas Company, against Public Utilities Commission of Kansas and others. On final hearing for injunction against the Missouri defendants. Granted.

See, also, 242 Fed. 658; 234 Fed. 152.

Chester I. Long, of Wichita, Kan., John H. Atwood, of Kansas City, Mo., and Robert Stone, of Topeka, Kan., for complainant.

H. O. Caster and F. S. Jackson, both of Topeka, Kan., for Public Utilities Commission of Kansas.

James D. Lindsay, of Jefferson City, Mo., for Public Service Commission of Missouri.

T. S. Salathiel, of Independence, Kan., for Kansas Natural Gas Co.

J. A. Harzfeld and A. F. Evans, both of Kansas City, Mo., for city of Kansas City, Mo.

H. J. Smith, of Kansas City, Kan., for city of Kansas City, Kan.

W. E. Stringfellow, of St. Joseph, Mo., for St. Joseph Gas Co.

T. F. Doran, of Topeka, Kan., for Consumers' Light, Heat & Power Co.

Charles Blood Smith, of Topeka, Kan., for Fidelity Title & Trust Co. and Sharitt, receiver.

Charles L. Faust, of St. Joseph, Mo., for city of St. Joseph, Mo.

E. F. Cameron, of Joplin, Mo., for city of Carl Junction, Mo.

M. T. January, of Nevada, Mo., for city of Nevada, Mo.

George J. Grayston, of Joplin, Mo., for Joplin Gas Co.

J. W. Dana, of Kansas City, Mo., for Wyandotte Gas Co. and Kansas City Gas Co.

BOOTH, District Judge. I had supposed until this morning that there was to be simply an informal conference by the receiver and his counsel in case No. 1351 Equity with reference to the question of the advisability of making a change in the rates for the coming winter and as to what those rates should be; but I am advised that other parties interested have been notified, and I think wisely so, as the conference might well take a broader scope than what I had supposed it was to take, because the question of rates is one in which a good many parties are interested. It is also a question upon which the court desires to get all the light possible before making any definite order.

It might very likely be of advantage, if not to all, at least to some of you, to know what decision has been reached upon the issues touching the Missouri defendants which were tried and submitted at Kansas City a few weeks ago in case 136–N Equity. I have not been able to prepare a written opinion for filing with regard to these issues; but I have, however, reached certain conclusions, and I think, perhaps, it

would be just as well that I should state what these conclusions are at this time, and then, if I think it advisable, I will reduce them later to writing and have them filed. If this is the desire of the attorneys, I will follow this plan, because I think it mày have some bearing upon the discussion as to what rates the court may order, and also have some bearing as to the position the attorneys may take upon one side or the other, and especially those representing Missouri defendants.

By a former decision, which was filed in April, and by a decree that was entered upon that decision, the issues in case No. 136–N, so far as they related specially to the Kansas defendants were disposed of, but the issues so far as they related specially to the Missouri defendants, and also the issue as to the status of the supply contracts, were held open for taking further evidence and for further consideration.

The jurisdictional questions raised by the Missouri defendants do not require further discussion. They have been disposed of by the former decisions, viz. the decision of the enlarged court, found in 234 Fed. 152, and the decision of this court filed April 21, 1917 (242 Fed. 658).

The principal issues in which the Missouri defendants are interested involve two main questions: First. Whether the acts of the Missouri Commission and of the Missouri defendants, or of certain of them, have been of such a character as to call for an injunction against them on behalf of the receiver. That question resolves itself into two subordinate questions: (a) Whether the business which is being carried on by the receiver, viz. the transportation of natural gas from Oklahoma and sale thereof in Missouri constitutes interstate commerce; (b) whether the acts of the Missouri Commission, or any of them, can be held to be acts which in effect deprive the receiver of the property of the company without due process of law. The second main question, and one in which not only the Missouri defendants, but also the Kansas defendants, are interested, is the question as to the status of the supply contracts originally made by the Kansas Natural Gas Company, or its predecessor, with various distributing companies, or their predecessors. This question, again, is divisible into two subordinate questions: (a) As to the status of the supply contracts as between the original parties or their assignees; and (b) the status of the supply contracts as to the receiver.

The relief sought by the receiver is: First, by way of injunction against the defendants, and especially against the Missouri Commission, restraining them from interfering with the carrying on of the business of transportation and selling of natural gas from Oklahoma into Missouri. The claim of the plaintiff is that the business thus carried on is interstate commerce, and that the Missouri Commission and some of the other defendants have attempted to unduly and directly burden this interstate commerce and to place restrictions upon it; and further it is claimed that the acts of the Missouri Commission in effect take away the property of the receiver without due process of law. Secondly, by way of injunction as against all of the defendants to prevent them or any of them from instituting any suits or proceedings or taking any steps without the consent of this court to enforce the provisions of the so-called supply contracts, which they

claim, or which some of them claim, are still in force as against the receiver—the receiver claiming: (1) That these supply contracts were invalid in their inception; (2) that, even if they were valid, yet, nevertheless, by reason of the changed circumstances, and by reason of the provisions in the contracts themselves looking towards a change of circumstances, they are no longer binding upon the original parties to these contracts; (3) that even if the contracts were valid in their inception, and still are existing valid contracts between the original parties, yet they are not at this time binding upon the receiver.

Similar relief is also sought by the Kansas Natural Gas Company and by several of the distributing companies. Several of the distributing companies and some of the cities take the position that these supply contracts are at present valid existing contracts upon the receiver as well as upon the original parties. Others of the distributing companies take the position that, while the contracts may be valid and existing between the original parties, yet they do not contend that they are binding upon the receiver.

[1] Now, as to the question of interstate commerce, I have gone over the record as well as I could within the time that I have been able to give to it, and in my judgment the facts upon which this issue stands in regard to the Missouri defendants are substantially the same as in the case against the Kansas defendants. The differences in them are not vital, and most of them in my judgment are immaterial. The question of storage has been presented and pressed with great earnestness, as being a very important factor to be taken into consideration in determining this question of interstate commerce. But to my mind the evidence shows that such storage as exists is merely incidental to the transportation of the gas, and in fact that it is a necessary incident to the proper and efficient transportation of the gas. Hence, this storage being merely incidental, it seems to me that it does not change the character of the business from interstate to intrastate commerce. Kelley v. Rhoads, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. Ed. 359; Swift & Co. v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518; Western Oil Co v. Lipscomb (June 4, 1917) 244 U. S. 346, 37 Sup. Ct. 623, 61 L. Ed. 1181; McFadden v. Railway Co., 241 Fed. 562, ——— C. C. A. ———.

Arguments have been made, and pressed with great earnestness, which are in substance to the effect that the court erred in holding in the former decision that the business was interstate commerce, and that in fact the entire business transacted by the receiver, whether relating to the state of Kansas or to the state of Missouri, is not interstate commerce. I have given to this matter all the attention which I have been able to give it, and also to the arguments of counsel upon this question. While I admit that there may be possible doubt as to the correctness of the conclusion reached, yet I do not see any reason at this time for reversing the decision as to the Kansas defendants; and I hold as to the Missouri defendants that the business transacted by the receiver in transporting natural gas from Oklahoma and selling it in Missouri is interstate commerce.

[2] It has been suggested by counsel that the situation presents a clash between the principle that a state may control public utilities do-

ing business within its boundaries and the principle that a state may not directly impose a burden on interstate commerce. If there is such a clash between these two principles, then I am clearly of the opinion that the decision must be in favor of the principle that the state may not directly burden or interfere with interstate commerce. That principle must prevail, rather than the principle that the state under all circumstances must have the fullest control over a public utility doing business within its borders. Whether there is such a clash between these two principles is not necessary for me to determine at this time.

[3] The Missouri Commission has made no orders fixing general rates for the sale of gas by the receiver within the state of Missouri, as was the case in regard to the Kansas defendants. But the Missouri Commission has done certain specific acts; amongst others, it has suspended schedules of rates which were agreed upon by the receiver and the distributing companies, and has threatened the distributing companies with further action against them if they should undertake to enforce those rates. It has also taken the position through its counsel in open court that it would recognize no rates as valid, unless those rates were first submitted to the Commission for its approval and approved by it. Not only that, it has taken jurisdiction over complaints by the distributing companies, and in some instances I think by the cities, as to rates; but, instead of proceeding to hearing upon these complaints, it has suspended the hearings from time to time, without attempting to reach any definite conclusion. It has attempted, by order made in August, 1916, to establish a new rate for natural gas in Kansas City, Mo. In these various acts the defendant cities have severally participated. The result of all this is that the receiver is seriously hampered in his business, and the distributing companies are also seriously hampered in their business, in attempting to put in a schedule of rates for the various cities in Missouri. In my judgment these acts on the part of the Missouri Commission constitute an attempt to directly interfere with and directly burden interstate commerce. I am likewise of the opinion that they also in effect constitute the taking of the property of the receiver without due process of law.

Now, as to the second main question, namely, the question of the supply contracts: These supply contracts were entered into by the original parties during the years from 1905 to 1908 or 1909, and perhaps later. As far as I have been able to examine them, they all contain one clause, which is very similar, and I do not know but it is identical in its wording:

"However, as the production of gas from the wells and the conveying of it from long distances is subject to accidents and interruptions and failures, the party of the first part does not under this contract undertake to furnish the parties of the second part with an uninterrupted supply of gas for the period named herein, but only to furnish such supply for such a period of time as the wells and pipe lines of the party of the first part and such other resources as the party of the first part shall be able to command are capable of supplying. And it is expressly understood and agreed by the parties of the second part that the party of the first part shall not be liable for any loss, damage, or injury that may result, either directly or indirectly, from such shortages or interruptions; but said party of the first part agrees to use diligence to supply the parties of the second part with a constant and sufficient supply of merchantable gas for all consumers."

All the contracts which I have examined contain a provision similar to that quoted. They all contain, also, or at least those which I have examined contain, certain provisions restrictive on the parties to the contract, restrictive as to the right of the parties furnishing the gas to furnish it to any other person or corporation doing business in the zone or district specified, and restrictive as against the distributing companies to prevent them from purchasing gas from any other person or corporation than the person named in the contract who is furnishing the gas, except under certain conditions.

In April, 1912, the Supreme Court of Kansas had occasion to review these contracts, and, while there is a difference amongst counsel as to just what the judgment of that court was in its effect, I think it must be conceded by all that the Supreme Court of the state of Kansas took the view that there were certain clauses, at least, in those contracts that were contrary to the statutes of the state of Kansas, and also contrary to public policy. It may very well be doubted whether those same restrictive clauses were not also a violation of the statutes of the United States against trusts and monopolies. State v. Kansas Natural Gas Co., No. 17977 (no written opinion filed); Montague & Co. v. Lowry, 193 U. S. 38, 24 Sup. Ct. 307, 48 L. Ed. 608.

With full knowledge of these facts, the United States District Court of the state of Kansas made an order in October, 1912, touching these contracts, and the gist of that order was that those contracts should not be binding upon the receiver, except upon further express order of the court. The Circuit Court of Appeals for this circuit in a decision in a case arising out of this general gas controversy upon a contract, not a supply contract, but a lease contract, also held that that contract was not binding upon the receiver, and took occasion in its decision to refer to the above-mentioned express order of the United States District Court of Kansas. K. C. Pipe Line Co. v. Fidelity Co., 217 Fed. 187, 133 C. C. A. 181. On two separate occasions the district court of Montgomery county, Kan., has held that these supply contracts are not merely not binding upon the receiver, but invalid in their inception, as being against the statutes of the state of Kansas, and being also against the statutes of the United States, as well as against public policy.

[4] There never has been any formal adoption by the receiver of these supply contracts. In such case it is not the law that a contract shall be binding upon the receiver until it is disavowed by him, but the law is that it is not binding upon the receiver until it is accepted by him; and, while it is true that ordinarily the law requires the receiver to indicate within a reasonable time whether or not he will accept a contract, in this particular case the court relieved the receiver of any necessity for taking any action by expressly ordering that the contract should not be binding upon the receiver until the court by its order made it binding. It was not necessary for the receiver to take any action on his part. If the other parties to the contract wished to have these contracts made binding upon the receiver, the court was open to them to make an application, and upon that application the court would have made such an order as was deemed necessary. No such action was ever taken, and the order of the court made in October,

1912, still stands, that these contracts are not binding upon the receiver until the further orders of the court may make them so.

Now, whether these contracts were originally valid or invalid, and whether they became functi officio, even if they were valid in their inception, are questions that it is not necessary for the court to decide at this time. The Kansas Natural Gas Company has in its pleadings prayed to have these contracts set aside as to it. I do not deem it advisable at this time to make any decision with regard to the validity of the contracts as between the original parties to them, whether they are still valid, whether they have ceased to be valid, or whether they were invalid in their inception. While I shall deny the prayer of the Kansas Natural Company at this time, it will be without prejudice to any action on the part of that company that it may see fit to take, whether in the cases that are pending in this court No. 1351 Equity, or No. 1 Equity, or otherwise. If it should see fit to take proper action to determine the validity of these contracts, this decision will not prejudice it from so doing.

The conclusions which I reach are that the business transacted by the receiver in Missouri is interstate commerce, that the supply contracts are not binding upon the receiver, that the Missouri Commission should be enjoined, and that such of the other defendants as have done acts or made any threats towards commencing any suit or proceedings, looking towards the enforcement of the supply contracts as against the receiver, should also be enjoined. A decree may be prepared accordingly.