**CITY OF NEW ORLEANS v. TEXAS & PAC. RY. CO. et al.**

No. 13634.

United States Court of Appeals
Fifth Circuit.

April 4, 1952.

Michel Provosty, New Orleans, La., for appellant.

John St. Paul, Jr., Sumter D. Marks, Jr., New Orleans, La., for appellee.

Before SIBLEY, RUSSELL and RIVES, Circuit Judges.

SIBLEY, Circuit Judge.

This case is a companion to that of the City of New Orleans v. Texas & New Orleans Railroad Co., 5 Cir., 195 F.2d 882, and involves the same "hold cars" agreement, and also a similar final decree declaring the agreement legal and valid and granting a perpetual injunction against refusal by the City, through its Public Belt Railroad Commission, to handle and hold cars according to the agreement and without additional compensation. The City appeals from the decree.

The appellees, on October 2, 1940, at about the time the City and the Texas and New Orleans Railroad Company made the amending contract dealt with in the above mentioned case, made an agreement for the use of the bridge at New Orleans and the tracks of the Public Belt Railroad substantially like the contracts of the Texas and New Orleans Railroad Company, and including the same provisions about "hold cars". This contract was submitted to the Interstate Commerce Commission on March 17, 1941, and the Commission, on July 8, 1941, Texas & Pacific R. Co., Operation, 247 I.C.C. 285, made its report. Not discussing particularly the hold car provision, it found (page 298) that the contract for joint use and operation "Is within the scope of Section 5(2) of the Interstate Commerce Act, as amended [49' U.S.C.A. § 5(2)], and that the transaction will be consistent with the public interest, that

the terms and conditions proposed are just and reasonable. * * * An appropriate certificate and order will be entered effective from 40 days after its date in which suitable provision will be made for the filing of tariffs. * * *" A certificate was issued and operations were carried on as agreed until December, 1943, when due to war conditions the tracks of the Public Belt Railroad became congested and appellees, having available tracks of their own to take care of their hold cars, temporarily ceased to deliver any to the Public Belt. A year later the Public Belt gave appellees written notice that it would not, after March 15, 1945, receive hold cars unless adequate compensation was agreed on after a joint study of the cost of the service. Though appellees were not at the time using the provisions of the contract, they considered them of large value, and expected to use them in the future. Accordingly, on March 5, 1945, this suit was filed in the district court, the ground of jurisdiction being diversity of citizenship.

1. One of the parties to this contract is a railroad corporation of Louisiana, apparently having the same interests as the plaintiffs, but which did not join in the suit and was not named as a defendant. The case was dismissed for lack of an indispensable party whose joinder would defeat jurisdiction. We reversed that decision, esteeming that the present controversy does not involve the entire contract, but only the several right of each railroad to have its hold cars handled at an agreed rate; and that the absent party had no interest in it, and would not be bound by a decision affecting the plaintiffs, made without prejudice to it. Texas & Pacific Railway Co. v. City of New Orleans, 5 Cir., 159 F.2d 77. We adhere to that decision.

2. No question is made in this case about the proper number of members of the Public Belt Commission having acted in making the contract. It has been approved by the Interstate Commerce Commission, and we hold it generally valid.

The contract as a whole has ample consideration to support each part. Lack or insufficiency of consideration specifically for the hold car provision does not avail to defeat the provision as a matter of law. The infirmity lies in the subject matter—a charge for railroad service which cannot be permanently fixed by contract. The Public Belt is a railroad, though owned by the City. So long as it engages in interstate and foreign commerce it is subject to the federal law and the Interstate Commerce Commission, like any other railroad. The approval by that Commission does not make this charge for holding cars unchangeable for the whole life of the contract, which may be renewed for 999 years. The Interstate Commerce Act authorizing approval, in Section 5(9) [49 U.S.C.A. § 5(9)] retains in the Commission power from time to time to make supplemental orders about it. This term of the contract, found to be reasonable and just in 1941, may under changed conditions have become otherwise. This charge indeed is part of the terminal charges at New Orleans, and must, under Section 6 of the Act [49 U.S.C.A. § 6], appear in the published tariffs, and this very order requires the making of tariffs, which we suppose include this charge, though we have not seen them.

Private contracts cannot stand in the way of just and reasonable rates under the Act. Not only must the public be protected from rates that are too high, but the carriers must be protected from those that have become too low, else the transportation system of the country may become disabled. The guarding of all these interests is committed to the Interstate Commerce Commission. We have not here a question of law, the construction of a contract about a rate, but the fact question whether the contract rate is unjust and unreasonable, a matter for the Commission alone.

There is no interlocutory injunction in this case. Since the complainants, now appellees, are not suffering for want of tracks any irreparable damage, there does not seem to be an occasion for any sort of injunction. We dispose of the case as we did the companion case. The final decree is set aside and the cause remanded to the district court with direction that it remain pending for four months from the entry of the remitter there, and if either party

has then filed proceedings before the Interstate Commerce Commission touching the matter in controversy, till such proceedings are terminated; and that thereafter such action be taken as then appears to be lawful and consistent with this opinion.

Reversed.