## SEABOARD AIR LINE R. CO. v. SAVANNAH UNION STATION CO.

No. 13761.

United States Court of Appeals, Fifth Circuit.

May 2, 1952.

On Rehearing June 18, 1952.

T. M. Cunningham, Savannah, Ga., Harold J. Gallagher, New York City, James B. McDonough, Jr., Norfolk, Va., for appellant.

Henry L. Walker, Washington, D. C., Charles Cook Howell, Wilmington, N. C., for appellee.

Before SIBLEY, RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

The determination of this appeal requires answer to the question whether the purchaser in a railroad receivership reorganization of the properties and rights in and under leases and operating agreements of the insolvent company, and its receivers, who, by the provisions of the sale, is given the right, within the time provided "to elect not to assume or adopt" any executory contract, and that "no user of rights prior to the expiration of said period shall be deemed to conclude the Purchaser in respect to such election, and upon the filing of such election the Purchaser shall be deemed not to have assumed or adopted such contracts, leases or any rights therein described or to be bound by the obligations of such contracts, leases or agreements", who timely elects not to adopt after a user of the rights so provisionally acquired, is bound contractually by the terms of such agreements for the time of use between the date of purchase and the date of election not to adopt, and the further question whether, under the circumstances, and as otherwise present here, the Court should fix and award judgment for rentals prior to rejection or should await determination of value of use by the Interstate Commerce Commission.

The appellant is the purchaser at a foreclosure sale directed by the receivership Courts. The operating agreement here involved grants trackage rights and use of station facilities essential to operation of a line of the railroad into and in the Savannah Union Station, owned by the appellee, who is the lessor. The purchase and use of such rights was approved and authorized by the Interstate Commerce Commission, (261 I.C.C. 689) subject to the rights of "disaffirmance". The operating agreement, providing for a term of 50 years, was originally entered into in the year 1902 by a corporate predecessor of the insolvent—in—receivership "seller". Its receivers had never formally adopted the operating agreement, but continued to use appellee's tracks and facilities and apparently paid rental at the agreed rate. The purchaser, appellant, did likewise but insists that such payments were made "not pursuant to the

Operating Agreement but on the same basis as if the Operating Agreement had been in effect as to it, with one exception." This exception is the amount appellee claims was appellant's share under the terms of the Operating Agreement of the cost of replacing certain electric signal wires and trunking with underground cable, which item, in the amount of $9,468.41, was awarded appellee by the judgment of the Court now appealed from. In the suit now under review the appellee's complaint was predicated upon the contention that an adoption of the Operating Agreement resulted from the user of the station facilities, and consequently that the notice of appellant's election not to adopt, which had been properly evidenced and given, was ineffective. Recovery was sought of the rentals computed as provided by the agreement for periods both before and after the time of appellant's notice of election not to adopt. The suit is the "Savannah action" referred to in our decision in Seaboard Air Line R. Co. v. Savannah Union Station Co., 5 Cir., 181 F.2d 267, in which we considered the unsuccessful effort of appellant to secure from the receivership Court an injunction against the prosecution of the present suit. As there determined, the merits of the Savannah action were not properly for determination by the receivership Court, or by this Court, since the only question was whether the receivership Court abused its discretion in dismissing the attempt to secure an injunction against its prosecution. However, many of the important facts of the cause are set forth in that decision and can be ascertained by reference. After that decision, the appellant filed its defenses by motions to dismiss and by answer, and subject thereto, demanded a trial by a jury. Among the points thus urged, and now controlling if determined in appellant's favor, is that appellant is not bound by the terms of the operating agreement and consequently only the Interstate Commerce Commission has jurisdiction to determine what reasonable rental it shall pay for the use of the facilities during the period prior to notice of its election not to adopt, as well as for the use subsequent to such notice. The appellee moved for

summary judgment in its favor. The appellant moved for summary judgment of dismissal. The trial Court, adjudging that "defendant Seaboard's rejection of the Operating Agreement operated prospectively and had no retroactive effect", awarded judgment for the amount of expense claimed which arose prior to the date of rejection as the stipulated rental and held that rental liability thereafter should be "reasonable rental" and that this should be determined by the Interstate Commerce Commission. Jurisdiction of the cause was retained to enforce the finding of that body, if necessary. Appellee apparently has abandoned the predicate of its suit for we are told that proceedings have been instituted before the Interstate Commerce Commission to have such rental determined.

The appellant insists that it was not, and is not, a party to the operating agreement; that it never made any affirmative adoption of that agreement and it was never bound by it. In support of its proposition that it did not become bound to the agreed rental by virtue of the use of appellee's property and the payment of rental therefor, and that a receiver, by taking possession of a leasehold does not become assignee of the term, it relies upon the rulings in Quincy, M. & P. R. Co. v. Humphreys, 145 U.S. 82, 12 S.Ct. 787, 36 L.Ed. 632, and United States Trust Co. v. Wabash W. Railway Co., 150 U.S. 287, 14 S.Ct. 86, 37 L.Ed. 1085, as well as our case of General Electric Co. v. Whitney, 5 Cir., 74 F. 664. In support of its contention that the election not to assume or adopt the agreement relates "back to the beginning of the receivership", appellant relies primarily upon the decision in Pennsylvania Steel Co. v. New York City Ry. Co., 2 Cir., 198 F. 721, and Samuels v. E. F. Drew & Co., 2 Cir., 292 F. 734, and other cases.[1] Consequently, treating its use of the tracks before, as well as after, the rejection of the agreement, as not within its terms, it insists that the Interstate Commerce Commission, and not

the Court, has jurisdiction to determine the proper rental to be paid for the use of appellee's facilities, citing Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132. In reply, appellee contends that the cited authorities are not in point because they rule only the principle that a receiver of a railroad who seasonably surrenders a lease of another railroad is not liable for any rentals of the leased railroad where the cost of its maintenance or operation exceeds the total earnings; and the receiver's operations are hence held to be for the account of the lessor railroad. It is further contended that the appellant misconstrues the effect of the Court's decree authorizing the election not to assume and that since, under the terms of the order of the Interstate Commerce Commission authorizing acquisition of the railroad properties by appellant, the stipulated rentals had already been approved there was no requirement for the matter to be reconsidered by that body. It is contended that the appellant can stand in no better position than would the receivers from whom it purchased, and that as to such a receiver, while he may lawfully reject an executory contract, he is liable for the stipulated payments for operations conducted by him under the contract prior to the date of his rejection. In support of this position, the case of Sunflower Oil Co. v. Wilson, 142 U.S. 313, 12 S.Ct. 235, 35 L.Ed. 1025 is cited, and our attention is called to the interpretation of it by this Court in Green v. Finnigan Realty Co., 5 Cir., 70 F.2d 465. We find ourselves in agreement with the appellee that the authorities relied upon by the appellant do not rule the question here presented where the operation of a reorganized railroad is involved. Furthermore, the decree of the Court provided, as we have quoted at the outset, that upon the purchaser exercising the election not to assume or adopt it "shall be deemed not to have assumed or adopted such contracts, leases, or any rights therein described or

1. Peabody Coal Co. v. Nixon, 8 Cir., 226 F. 20; Irving Trust Co. v. Densmore, 9 Cir., 66 F.2d 21, 23; In re United Cigar Stores, 2 Cir., 69 F.2d 513, 515; Kansas City Pipe Line Co. v. Fidelity Title & Trust Co., 8 Cir., 217 F. 187, 188 (h. n. 2); Landon v. Court of Industrial Relations, D.C., 269 F. 423, 429; Landon v. Public Utilities Comm., D.C., 245 F. 950, 955.

to be bound by the obligations of such contracts, leases or agreements * * *." The order of the Interstate Commerce Commission authorizing the acquisition and operation recognized that "trackage rights and joint use of facilities" were to be acquired as specified "except to the extent that the agreements creating such trackage rights or rights of joint use may hereafter be disaffirmed by the receivers or the new company." This order also authorized disaffirmance of executory contracts and leases of the properties dealt with in the plan of reorganization within one year after the transfer of them "except those made binding by Court orders." The permissible period for election was duly extended by subsequent Court order. The provision of the Court's decree under which the appellant became the purchaser as the result of the assignment of the bid of the reorganization committee and the applicable law supports the ruling that the election not to assume or adopt, when exercised, related back at least to the time of purchase. After the exercise of such an election, the operating agreement afforded no standard of measurement of the obligation of appellant for rentals which the Court should have enforced. In these circumstances the power committed to the Interstate Commerce Commission with reference to such matters comes into operation. The question of what amount of rental the appellant should pay is primarily for determination by the Interstate Commerce Commission and the fixing of just and reasonable rental is a matter for the administrative determination of that body. The obligation is to pay the value of use. This generally may be the stipulated rental, except where special circumstances might render this inequitable in case a court of equity is determining the matter. But we need not pursue this further and do not attempt to prescribe any hard and fast rule, for in this case, one concerning railroad operations, and where there is a period of use when admittedly no contract is of force and for which the Interstate Commerce Commission must fix the rental, we think the entire matter of rentals, both before and after the rejection, should be fixed by that body as it may find to be "just and reasonable". We do not consider that the decision of the Commission that the contract was just and reasonable for the year subsequent to its decision should be construed to contemplate the fixing of just and reasonable rental for use without rejection for three years. The Commission has never decided this, nor has it determined whether the charge now in

question properly represents a repair or whether it was in fact an improvement, or betterment.

The District Court should have stayed its hand as to rentals before, as well as after, rejection to await this determination of the Commission. Thereupon it should grant such relief as may be appropriate. Thompson v. Texas Mexican Ry. Co., supra; General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361; City of New Orleans v. Texas & Pacific Railway Co., 5 Cir., 195 F.2d 887; City of New Orleans v. Texas and New Orleans Railroad Company, 5 Cir., 195 F.2d 882.

We set aside the judgment appealed from and direct that the cause remain pending for future adjudication, if necessary, in proceedings consistent with this opinion.

Reversed with direction.

On Petition for Rehearing.

PER CURIAM.

The reference in the opinion to the abandonment by appellee of the predicate of its suit refers only to the original claim that rentals both before and after rejection were due because of user, and to the absence of complaint in this appeal of the judgment which remitted appellant to the Interstate Commerce Commission for determination of rentals due after rejection. This fact in no way prejudiced our consideration of the appeal.

The motion for rehearing is denied.