WYANDOTTE COUNTY GAS COMPANY *v.* STATE OF KANSAS, ON RELATION OF MARSHALL, ATTORNEY FOR THE PUBLIC UTILITIES COMMISSION OF THE STATE OF KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 472. Argued December 2, 1913.—Decided January 5, 1914.

The fact that the determination of the question of power of the municipality to make the contract alleged to have been impaired involves consideration and construction of the laws of the State does not relieve this court from the duty of determining for itself the scope and character of such contract.

While this court, in determining whether there is a contract, is not bound by the construction of the state statutes by the state court, it will not lightly disregard such construction but will seek to uphold it

so far as it can consistently with the duty to independently determine the question.

In this case, this court reaches independently the same conclusion as the state court in determining that under the authority conferred by the statutes of Kansas the municipality cannot divest itself by contract of its duty to see that only reasonable rates are enforced under a public utility franchise.

A proviso in a public utility statute, in which manufactured gas, light and water were enumerated, stating that municipalities were not prohibited from granting franchises for supplying natural gas on terms and conditions agreed to by it and the franchisee, construed as bringing natural gas within the statute, and that the terms and conditions on which the franchise could be granted were subject to the same limitations contained in the statute as applicable to franchises for other utilities.

88 Kansas, 165, affirmed.

THE facts, which involve the power of a municipality in Kansas to regulate charges for natural gas, are stated in the opinion.

*Mr. J. W. Dana,* with whom *Mr. W. F. Douthirt* was on the brief, for plaintiff in error:

The construction of this court is controlling and it will determine for itself whether a contract exists within the meaning of the contract clause of the Constitution. *Louisville Gas Co.* v. *Citizens Light Co.,* 115 U. S. 683, 697; *McCullough* v. *Virginia,* 172 U. S. 102; *Crosslake Club* v. *Louisiana,* 224 U. S. 632; *Vicksburg* v. *Water Co.,* 185 U. S. 65.

Power to regulate rates by municipality may be suspended by contract. *Home Tel. Co.* v. *Los Angeles,* 211 U. S. 265; *Detroit* v. *Citizens Railway Co.,* 184 U. S. 368; *Vicksburg* v. *Waterworks Co.,* 206 U. S. 496.

Municipal corporations may be invested by statute with power to bind themselves by irrevocable contract not to regulate rates. *Water Co.* v. *Freeport,* 180 U. S. 587; *Los Angeles* v. *Water Co.,* 177 U. S. 558; *Water Co.* v. *Walla Walla,* 172 U. S. 1; *New Orleans Water Co.* v.

*Rivers,* 115 U. S. 674; *Louisville v. Cumberland Tel. Co.,* 224 U. S. 648; *Vicksburg v. Water Co.,* 185 U. S. 65; *Vicksburg v. Waterworks Co.,* 202 U. S. 453; *Street Railway Co. v. Minneapolis,* 215 U. S. 417.

The power to fix and regulate rates is governmental, inherent in the State, and cannot be exercised by a subordinate subdivision such as a municipality unless conferred by the State. *Home Tel. Co. v. Los Angeles,* 211 U. S. 265; *Water Co. v. Freeport,* 180 U. S. 587; *Stanislaus County v. San Joaquin Co.,* 192 U. S. 201.

The power to regulate rates by a municipality may be implied from the statute, and if implied is as authoritative as though expressly granted. *Home Tel. Co. v. Los Angeles,* 211 U. S. 265; *Street Railway Co. v. Minneapolis,* 215 U. S. 417; *Vicksburg v. Water Co.,* 206 U. S. 496.

This power is clearly implied in the Kansas statutes, and by § 51 of the act of 1903 municipalities were given power to prescribe and fix reasonable and just maximum rates for public utilities, and under § 170a the municipality was given power to agree on terms with companies supplying natural gas. Similar provisions in the other statutes involved in the cases cited *supra* have been construed as conferring power on municipalities to make binding contracts as to rates in future. See also *Water Co. v. Omaha,* 147. Fed. Rep. 1; *City Ry. Co. v. Citizens Ry. Co.,* 166 U. S. 557.

The decisions of the Kansas courts are a part of the contract in this case and estop the State from denying its validity. *Territory v. Rayburn,* 1 Kansas, 552; *Jones v. State,* 1 Kansas, 273; *Dudley v. Reynolds,* 1 Kansas, 285; *Leavenworth v. Rankin,* 2 Kansas, 357; *Leavenworth v. Laing,* 6 Kansas, 287; *Atchison Street Ry. v. Mo. Pac. Ry.,* 31 Kansas, 661; *Wood v. Water Co.,* 33 Kansas, 597; *Wyandotte v. Corrigan,* 35 Kansas, 24; *Winfield v. Gas Co.,* 37 Kansas, 24, and 51 Kansas, 70; *Water Co. v. Burlington,* 43 Kansas, 725; *Manly v. Emley,* 46 Kansas, 655; *Water*

*Co.* v. *Columbus*, 48 Kansas, 99; *Watkins* v. *Glenn*, 55 Kansas, 417; *Mills* v. *Osawatomie*, 59 Kansas, 463; *State* v. *Water Co.*, 61 Kansas, 561. See also § 59, c. 100, Laws of Kansas 1872, under which power to regulate is reserved and the power to contract is not modified. *Baxter Springs* v. *Light Co.*, 64 Kansas, 591; *Bank* v. *Arkansas City*, 76 Fed. Rep. 271, and cases cited.

The contract in this case has been sustained in *Wyandotte Gas Co.* v. *Commissioners*, 83 Kansas, 195.

The binding force of municipal franchise contracts has been so often sustained by the Kansas courts as not to be now open. Cases *supra*, and see also *Potwin Place* v. *Topeka Ry. Co.*, 51 Kansas, 609; *Street Ry. Co.* v. *Nave*, 38 Kansas, 744; *Kansas City* v. *Gas Co.*, 9 Kans. App. 325; *Water Co.* v. *Galena*, 74 Kansas, 644; *Brown* v. *Atchison*, 39 Kansas, 37.

*Mr. Richard J. Higgins,* with whom *Mr. Henderson S. Martin, Mr. A. E. Helm* and *Mr. John Marshall* were on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The Supreme Court of the State of Kansas, with a modification to which it is not necessary to refer, affirmed a decree of the District Court of Wyandotte County, Kansas, enjoining the plaintiff in error, the Wyandotte County Gas Company, from charging domestic consumers in the cities of Kansas City, Kansas and Rosedale, Kansas, for natural gas furnished, any sum in excess of 25 cents per thousand cubic feet. To such decree this writ of error is directed, and the Federal ground relied upon for reversal, is the existence of contract rights in favor of the Gas Company, which it is insisted were impaired by the action of the court below.

The price which the court below sustained was lower than the rate charged by the Gas Company and was in effect a statutory rate since a state law fixed the rate and forbade the charging of a higher rate without the consent of the State Utilities Commission, which consent the Gas Company, under the theory that its contract relieved it from doing so had not sought to obtain.

The court below rested its conclusion upon the grounds, first, that the company had no contract rights fixing rates which were impaired by enforcing the lower rate fixed in the subsequent state law, and second, that if the city had agreed with the company to fix contract rates, the action of the city was void since the city possessed no authority to make a contract limiting its power to fix reasonable rates for the future. As the question of power, which the last proposition involves, lies at the foundation of the case, we come first to consider it, indulging, for the sake of argument in the hypothesis that the city contracted with the company for fixed rates during a stated period, which contract would be impaired if the subsequent legislation here complained of was enforced.

At the outset it is certain that the determination of the question of power involves a consideration and construction of the law of the State from which the city derived its authority. While, indeed, that fact does not relieve us from the duty of determining for ourselves the scope and character of the asserted contract, it is yet elementary doctrine that in the discharge of such duty it is incumbent upon us not to lightly disregard the construction put by the court below upon the statutes of the State, but to seek to uphold such construction as far as it can be done consistently with the obligation to independently determine whether a contract exists which in disregard of the Constitution has been impaired by subsequent legislation.

The alleged contract arises from the passage in 1904 by the city of ordinance 6051 and action taken thereunder.

The question of power is to be determined by a considera-
tion of a comprehensive state law adopted in 1903 regu-
lating cities of the first class, of which Kansas City was
one. This law was incorporated in the general statutes
of Kansas for 1905, and in referring to it we quote the
section numbers as found in the act of 1905, putting in
brackets the section numbers of the law of 1903 as orig-
inally adopted. Under the heading of "General Provi-
sions" in the fourth paragraph of § 735 [3] cities of the
first class were empowered "To make all contracts and
do all other acts in relation to the property and con-
cerns of the city necessary to the exercise of its corporate
or administrative powers."

Under the heading of "Legislative Department, Powers
of the Mayor and Council" it was provided in § 784 [51]:

"Rates for Water, Light, etc. Sec. 51. To prescribe
and fix maximum rates and charges, and regulate the
collection of the same, for all water, electric light, heat,
power, gas, telephone service or any other commodity
or service furnished to such city or to any of the inhabit-
ants thereof by any person or corporation now authorized
by such city by virtue of a franchise ordinance, or that
may hereafter be authorized by virtue of a franchise or-
dinance to furnish water, electric light, heat, power, gas
or telephone service, or any other commodity or service,
to such city or to its inhabitants. The rates and charges
so prescribed shall at all times be reasonable and just;
and if any city shall fix unreasonable and unjust rates
and charges, the same may, at the instance of any producer
or consumer, be reviewed and determined by the district
court of the county in which such city is situated."

Under the heading of "Public Utilities," § 902 [167],
authority was given for the securing of an adequate supply
of water and the granting of franchises to that end, as well
as of contracting for laying pipes, etc., etc. The section
contained the following provision as to rates:

"Provided further, that . . . the mayor and council of any such city shall at all times during the existence of any such grant, contract or privilege have the right by ordinance to fix a reasonable schedule of maximum rates to be charged for water for public and private purposes by any such person, company or corporation: Provided, however, That said mayor and council shall at no time fix a rate which will prohibit such person, company or corporation from earning at least eight per cent. on its capital invested over and above its operating expenses and expenses for maintenance and taxes. In establishing and fixing such rates, the value of the plant and property of any such person, company or corporation shall be taken into consideration, but the value of such franchise, contract and privilege given and granted by the city to such person, company or corporation shall not be taken into consideration in ascertaining the reasonableness of the rates to be charged to the inhabitants of such city."

Moreover, the section, after directing that a contract should be reduced to writing, contained the following:

"and any attempt to evade, directly or indirectly, the requirements of this act as to such consideration, or the obligations and conditions of such contract, shall render such contract and franchise absolutely null and void and inoperative."

By § 904 [169] the same general power was given to make contracts and grant franchises, etc., concerning heat, light, power and street railway franchises, as was conferred, as above stated, for the purpose of obtaining a water supply; but as to the authority to fix rates by contract, the power was limited by a restriction in substance the same as that which was imposed upon the right to contract for rates for the purposes of a water supply, since by § 905 [170] the right of the city in that respect was expressly reserved to

"at all times during the existence of any such grant,

contract or privilege  .  .  .   to fix a reasonable schedule of maximum rates to be charged for public and private. purposes, including street lighting by any such person, company, or corporation, to the inhabitants of any such city, for gas light, electric light, electric power, or heat, and the rates of fare on any street railway."

Section 906 [170a], contained regulations as to the period of the contract which might be made and other general regulations, and closed with the provision which is inserted in the margin. [1]

Considering these statutory provisions the court below (88 Kansas, 165) decided that they did not authorize the city to divest itself by contract of its duty to see that nothing but reasonable rates were enforced, however much the statute might have as to other subjects conferred upon the city an authority to contract in the complete sense. Looking comprehensively at the provisions in question, in the light of the duty resting on us to which at the outset we referred, not lightly to disregard the construction which the state court of last resort has given to the statutes of the State, we can see no ground for holding that the court erred in its conclusion. Conceding that there are forms of expression used in the statute which taken isolatedly might be considered as having conferred the power to fix a contract rate, such concession is not decisive, since we must consider the statute as a whole. And

---

[1] *Nothing in this act shall be construed as prohibiting any city governed and controlled by the provisions of this act from granting, and the mayor and council of any such city are hereby authorized to grant, to any person, company, or corporation, a franchise to construct, maintain and operate a natural-gas plant for the purposes of furnishing to said city and its inhabitants natural gas for lights, fuel, and all other purposes, with authority to lay and maintain all necessary mains and pipes in the streets, avenues, alleys and public grounds of said city, on such terms and conditions as may be agreed to by said mayor and council and such person, company, or corporation: Provided, That such franchise shall not continue for a longer period than twenty years.*

when we do so, we think, to divorce the expressions referred to, from the context would be, not to interpret and apply, but to distort the statute. Especially is this conclusion necessary when the broad scope of the provisos which we have quoted is taken into view, since they in effect forbid the making of contract rates as to both water and gas by commanding that the governmental power to see to it that only reasonable rates are exacted shall be perpetually preserved and exerted. In face of such a plain manifestation of the legislative will, it would be a departure from the obvious intent and purpose of the lawmaker to hold that the statute conferred the power to do that which the text makes it apparent there was a dominant and fixed purpose of the legislature to forbid. This conclusive view also applies to the special provision concerning natural gas. We say this because, as obviously the prior sections of the statute embraced only manufactured gas, the provision as to natural gas was rendered necessary in order to give the same power to deal with that subject as was conferred concerning manufactured gas. In other words, on its face, the purpose of the provision was to bring natural gas within the statute, subject to the regulations and limitations which the statute imposed and it could not therefore have been intended to cause dealings concerning natural gas to be for the purposes of power conferred within the statute and at the same time to exclude the conferred authority from the safeguards and regulations which the statute exacted. The bringing of natural gas within the power therefore caused it to be subject to the limitations which the statute imposed and which as we have seen rendered it impossible to contract away the governmental power to forbid unreasonable and secure reasonable rates.

*Affirmed.*