## LANDON et al. v. COURT OF INDUSTRIAL RELATIONS OF STATE OF KANSAS et al.

(District Court, D. Kansas, First Division.   November 17, 1920.)

No. 136–N.

1. **Receivers ⇐90—Not bound by contract to supply gas to distributors, unless accepted.**

   Where the orders appointing receivers for a natural gas supply company in no case approved of the contracts between the supply company and the distributing companies, and in some cases expressly withheld approval, those contracts are not binding on the receivers until accepted by them pursuant to the order of the court; it being unnecessary that they disavow them.

2. **Contracts ⇐10(1)—Monopolies ⇐17(2)—Contracts between supply company and distributors held void for illegality, or want of mutuality.**

   Contracts between a natural gas supply company and the several distributing companies for the supply of gas to the latter for their distribution, which contained provisions requiring the distributing companies to purchase gas only from the supply company, or made them its exclusive agents for the sale of gas in their several localities, which provisions were void under the Kansas anti-trust laws, are not binding upon the supply company, since the contracts, with those provisions omitted, lacked mutuality.

3. **Gas ⇐13(1)—Supply contracts held terminated by exhaustion of fields covered thereby.**

   Contracts for the supply of natural gas by a supply company to distributing companies, which were to continue for a stated term, unless the fields within the state from which the company obtained its supply became exhausted, are terminated when the fields referred to become practically exhausted, though the supply company, at greater expense, was able to procure a supply from wells in another state.

4. **Gas ⇐14(1)—Rate contracts are subject to legislative supervision and abrogation, unless right is clearly renounced.**

   The rate contracts of public utilities are subject to legislative supervision and abrogation, except where the renunciation of such right of the state is evidenced by the most clear and unequivocal terms, so that contracts fixing the rates to be paid by natural gas distributing companies to the supply company were abrogated by Laws Kan. 1911, c. 238, § 30, and by the orders of the Public Utilities Commission and of the Court of Industrial Relations of that state, establishing different rates.

Suit by John M. Landon and another, as receivers of the Kansas Natural Gas Company, against the Court of Industrial Relations of the State of Kansas and others. On hearing to determine whether the receivers or the Kansas Natural Gas Company are bound by contracts with the several defendant distributing companies. . Decree ordered that the contracts were of no force and effect.

See, also, 269 Fed. 411.

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Chester I. Long, of Wichita, Kan., John H. Atwood, of Kansas City, Mo., and Robert Stone, of Topeka, Kan., for John M. Landon, receiver.

T. S. Salathiel, of Independence, Kan., and Robert A. Brown, of St. Joseph, Mo., for Kansas Natural Gas Co.

John J. Jones, of Wichita, Kan., for George F. Sharitt, receiver.

Charles Blood Smith, of Topeka, Kan., for Fidelity Title & Trust Co.

Fred S. Jackson, of Topeka, Kan., for Public Utilities Commission of Kansas and its members.

J. W. Dana, of Kansas City, Mo., for Kansas City Gas Co., Wyandotte County Gas Co., and Citizens' Light, Heat & Power Co. of Lawrence.

James D. Lindsay, of Jefferson City, Mo., for Public Service Commission of Missouri.

C. A. Loomis, of Kansas City, Mo., for Jackson County Gas Co., Gardner Gas Co., Edgerton Gas Co., Wellsville Gas Co., Anderson County Light & Heat Co., Richmond & Princeton Gas Co., Baldwin Gas Co., Kansas Farmers' Gas Co., Ottawa Gas & Electric Co., Western Gas & Light Co., Wier Gas Co., and Parsons Gas Co.

T. F. Doran, of Topeka, Kan., for L. G. Treleaven, receiver.

Edward Sapp, of Galena, Kan., for Macon Gas Co.

W. E. Brown, of Atchison, Kan., for Atchison Ry., Light & Power Co.

Floyd Harper, of Leavenworth, Kan., for Leavenworth Light, Heat & Power Co.

H. J. Smith, of Kansas City, Kan., for Kansas City, Kan.

R. B. Caldwell, of Kansas City, Mo., for Kansas Gas & Light Co. and Home Light & Power Co.

E. W. Clausen, of Atchison, Kan., for city of Atchison.

B. F. Bowers, of Ottawa, Kan., for city of Ottawa.

L. V. Stigall and Charles L. Crowley, both of St. Joseph, Mo., for city of St. Joseph.

M. A. Fyke, of Kansas City, Mo., for Kansas City, Mo.

W. E. Ziegler, of Coffeyville, Kan., for Coffeyville Gas & Fuel Co.

H. H. Diechler, of Coffeyville, Kan., for city of Coffeyville.

T. M. Vrady, of Parsons, Kan., for city of Parsons.

George P. Hayden and H. O. Corwine, both of Topeka, Kan., for city of Topeka.

F. S. Jackson, of Topeka, Kan., for all Kansas cities not otherwise represented.


BOOTH, District Judge.   Subsequent to the filing of the decision (August 7, 1920) upon the second trial of the issue relative to the 28-cent rate order of the Public Utilities Commission of Kansas, of December 10, 1915, this cause again came on for hearing upon the issues touching the validity and status of the so-called supply contracts, both as to the receiver and as to the Kansas Natural Gas Company.

The contracts in controversy, as set forth in plaintiff's amended and

supplemental bill, are as follows (they have been divided into groups, for convenience of court and counsel in discussing the same upon the trial):

## A

| Distributing Company. | City or Town. | Date Made. |
|---|---|---|
| 1. Consumer's Light, Heat & Power Company (L. G. Treleaven, Receiver) | Topeka, Kansas | Jan. 5, 1905 |
| 2. | Oakland, Kansas | Oct. 3, 1906 |
| 3. American Gas Company | Altamont, Kansas | March 10, 1905 |
| | Oswego, Kansas | March 10, 1905 |
| | Columbus, Kansas | March 10, 1905 |
| | Galena, Kansas | March 10, 1905 |
| | Empire City, Kansas | March 10, 1905 |
| | Scammon, Kansas | March 10, 1905 |
| | Cherokee, Kansas | March 10, 1905 |
| | | And Supp. Agreement July 31, 1905. |
| 4. American Gas Company | | |
| 5. Citizens Light, Heat & Power Company | Lawrence, Kansas | Feb. 18, 1905 |
| 6. Home Light, Heat & Power Company (Kansas Gas & Electric Co., lessee) | Pittsburg, Kansas | Feb. 18, 1905 |
| 7. Union Gas & Traction Co., Weir Gas Company | Weir City, Kansas | Sept. 18, 1905 |
| 8. Baldwin Gas Company | Baldwin, Kansas | July 10, 1905 |
| 9. Anderson County Light & Heat Company | Colony, Kansas | Feb. 1, 1906 |
| 10. | Welda, Kansas | May 29, 1905 |
| 11. Richmond & Princeton Gas Company | Richmond, Kansas | May 29, 1905 |
| 12. | Princeton, Kansas | May 29, 1905 |
| 13. Johnson County Gas Co. | Merriam, Kansas | Feb. 1, 1906 |
| | Shawnee, Kansas | Feb. 1, 1906 |
| | Lenexa, Kansas | Feb. 1, 1906 |
| 14. Edgerton Gas Company | Edgerton, Kansas | May 29, 1905 |
| | Wellsville, Kansas | |
| | LeLoup, Kansas | |
| 15. Kansas Farmers Gas Co. | Rural (Douglas, Johnson and Franklin Counties) | Jan. 16, 1911 |
| 16. Leavenworth Light, Heat & Power Company | Leavenworth, Kansas | May 16, 1905 |
| 17. Ottawa Gas & Electric Co. | Ottawa, Kansas | Sept. 30, 1905 |
| 18. Tonganoxie Gas & Electric Co. | Tonganoxie, Kansas | Nov. 2, 1905 |
| 19. Atchison Railway, Light & Power Company | Atchison, Kansas | July 12, 1905 |
| 20. Coffeyville Gas & Fuel Company | Coffeyville, Kansas | August 14, 1905 |
| 21. Joplin Gas Company | Joplin, Mo. | Jan. 19, 1905 |
| 22. Weston Gas & Light Co. | Weston, Mo. | Feb. 1, 1905 |
| 23. Gardner Gas Company | Gardner, Kansas | June 27, 1905 |
| 24. Baxter Springs Ong. Co. | Thayer, Kansas | Nov. 1, 1901 |

## B

| | | |
|---|---|---|
| 25. Liberty Gas Company | Liberty, Kansas | Oct. 12, 1909 |
| 26. Olathe Gas Company | Olathe, Kansas | Nov. 30, 1908 |
| 27. Ft. Scott Gas & Electric Co., John C. Cannon, Receiver of Ft. Scott Gas & Electric Co. | Ft. Scott, Kansas | March 13, 1907 |

28. Ft. Scott & Nevada Light, Heat,
    Water & Power Co. (Central Gas
    Company) ....................Nevada, Missouri
                                 Moran, Kansas
                                 Bronson, Kansas
                                 Deerfield, Missouri ......May 1, 1910
29. Ft. Scott & Nevada Light, Heat,
    Water & Power Co. (Central Gas
    Company) ....................Nevada, Missouri .......Jan. 16, 1911
30. Carl Junction Gas Co. ............Carl Junction, Mo. .......Dec. 1, 1905
31. Oronogo Gas Company ...........Oronogo, Missouri .......Dec. 1, 1905

C

32. Wyandotte County Gas Company..Kansas City, Kansas .....Feb. 1, 1906
                                 Rosedale, Kansas ........Feb. 1, 1906
33. Kansas City Gas Co. ............Kansas City, Mo. .......Nov. 16, 1906
34. Kansas City Gas Co.........................................Dec. 3, 1906

D

35. St. Joseph Gas Co. ..............St. Joseph, Mo. ........Aug. 30, 1905

To the foregoing list should be added a supplemental contract:

E

36. Leavenworth Light, Heat & Power
    Company ....................Leavenworth, Kansas .....Sept., 1912

—made after the judgment and order by the Supreme Court of Kansas, in the case of State of Kansas ex rel. Attorney General v. Kansas Natural Gas Company, No. 17977 (no written opinion filed), prohibiting the carrying out of certain provisions in the original contracts, as being in violation of the anti-trust laws of the state of Kansas.

There are two distinct questions to be considered as to these supply contracts: First, whether the contracts are valid and binding upon the receiver; second, whether they are binding upon the Natural Gas Company.

Taking up the first question, the following facts appear from the files, records and evidence introduced upon the trial:

The original receivers (predecessors of the present receiver) of the Kansas Natural Gas Company were appointed by this court in the case of John L. McKinney v. Kansas Natural Gas Company, No. 1351, Equity, on October 9, 1912. In the original order of appointment is found the following provision:

"Third. That upon the filing and approval of the said bonds, the said receivers (or each of them as fast as his respective bond is filed and approved) be and they are hereby authorized, empowered and directed to take immediate possession of all and singular the pipe lines, compressor stations, leases and other property above described or referred to, wherever the same may be situate or be found and, until the further order of this court, to continue the operation of the present pipe line system and natural gas business of the defendant company and every part or portion thereof, and to run, manage, conduct and operate such pipe lines and property as the defendant company holds, controls or operates under leases, contract arrangements or otherwise. All of which is to be done, until the further order of the court, as heretofore done, run or operated by the defendant company.

"But the court expressly reserves to itself the right to pass upon, approve, disapprove, disavow and cancel any and all leases, arrangements and contracts of every nature, kind and description, under or by virtue of which the

defendant company has been or is now operating any of its leased lines and property, or selling or furnishing any of its gas for distribution and sale, or buying and acquiring any gas for use and transportation through its operated lines; and no such leases, arrangement or contract shall be regarded as binding or taken by the receivers until expressly ordered by this court in these proceedings, and nothing herein contained shall be considered or taken as in any way accepting, approving, satisfying or adopting any such lease, arrangement or contract."

Pursuant to orders of this court, dated January 24, 1914, and September 22, 1914, the actual possession and management of the properties of the Kansas Natural Gas Company were turned over by the then sole receiver of this court to receivers theretofore appointed by a decree of the state court of Montgomery county, Kan., filed February 17, 1913, in the suit entitled State of Kansas v. Kansas Natural Gas Company et al., No. 13476. By that decree it was ordered that the distributing companies on the line of the Kansas Natural Gas Company in Kansas be made parties defendant, and it was further ordered, as to said distributing companies and touching said supply contracts, as follows:

"They and each of them are hereby enjoined and restrained from participating in any combination in restraint of trade in the buying, selling, transporting or distributing of natural gas and from shutting off or limiting their supply of gas and from advancing the price of gas or participating in any attempt to advance the price of gas to the consumers of gas within the state of Kansas, without the express order and permission of the Public Utilities Commission of the state of Kansas, or of this court, until the final disposition of this action or the further order of this court or the judge thereof.

"And it is further ordered that said parties, each and every of them, are enjoined and restrained from appearing in any other court for the determination of any matter in connection with their contracts with the defendant the Kansas Natural Gas Company, for the furnishing of a supply of gas or concerning any of the other matters involved in this action or affecting the corporate property, assets or liabilities of the Kansas Natural Gas Company."

In December, 1915, the present suit, 136–N, was commenced in this court by the receivers of the state court of Montgomery county pursuant to the direction of that court; and the enlarged federal court, sitting upon the hearing for a preliminary injunction, said in reference to the supply contracts (June 3, 1916):

"It has not been and is not necessary for this court as at present constituted to determine the validity of the city ordinances, the contracts between the cities and the distributing companies, the contracts between the distributing companies and the Natural Gas Company and the duties and obligations of the receiver under them in order to adjudicate the issues it was constituted to decide and for that reason no opinion is expressed or adjudication made concerning them."

On October 16, 1916, the receiver filed with the state court of Montgomery county, Kan., in case 13476, an application for instructions in reference to said supply contracts, and that court by its decision upon said application found as follows:

"Neither the receivers of this court, nor of the United States court, appointed for Kansas Natural, have ever adopted any of said contracts, nor have any of said receivers operated under them, but have continued to transport gas to said distributing companies under a method of dealing similar to that employed by the Kansas Natural."

And as a conclusion of law:

"That neither the receiver of this court, nor the receivers of the United States court have by their act or otherwise adopted any of the supply contracts with the various distributing companies."

And the court thereupon ordered as follows:

"It is therefore considered, adjudged and decreed that none of the distributing contracts aforesaid are binding upon, or effective against, said receiver, and that he should not, and is hereby forbidden to, deliver natural gas to any of said distributing companies under the distributing contracts formerly existing between the Kansas Natural Gas Company and said distributing companies, respectively; and he is hereby ordered to deliver natural gas to such of said distributing companies as will receive the same at the rates and prices and on the terms named in the schedule of rates and prices heretofore promulgated by said receiver to said distributing companies, respectively; and the acts of said receiver in promulgating said schedules are hereby approved.

"And this court, recognizing that its power does not extend beyond the state of Kansas, hereby directs said receiver to present to the United States District Court for the District of Kansas, First Division, the foregoing findings of fact and conclusions of law and this order, and to pray said federal court for such orders as will effectuate the law applicable to the Kansas Natural property in Missouri and Oklahoma, and thus bring the same in operative harmony with the Kansas Natural property in Kansas, to the end that the public may be served and said property preserved."

Pursuant to said last-mentioned order said receiver immediately, on the 17th of October, 1916, made application to this court, in case 1351, Equity, for instructions, and this court, in reference to said application, said:

"An order has been entered by the state court of Montgomery county, an administrative order, and an opinion rendered as to the binding force and effect of these supply contracts upon its receiver. That court has given certain directions to the receiver as to what he shall do, and how he shall dispose of gas and at what price. That order is an administrative order made by a court which has control of the administration and operation of the property, and that administrative order will be respected by this court, which appointed the same person ancillary receiver to the receiver of the state court.

"At this time, I do not think it is either necessary or advisable for this court to enter any order in regard to the administrative order which has been entered in the state court of Montgomery county, but this court will retain jurisdiction for such purpose if it becomes necessary."

Some months later, upon the trial of case 136–N, in this court, in passing upon a motion to strike out certain parts of the amended and supplemental answer of Treleaven, as receiver, on the ground that it attempted to inject new issues into the case, this court said:

"Now, as to the other issues, namely, the validity of the contracts made originally by the Kansas Natural Gas Company, or its predecessors, with the distributing companies, and their status both as between the original parties and as to the receiver: * * * It was held by the state court of Montgomery county some time ago that the receivers of that court had never adopted those contracts, and the order of this court appointing the original federal receivers provided expressly that those contracts should not become binding upon the receivers of this court, except by the express order of this court. I think, therefore, it must be taken as settled at this time, at least in this court, that those contracts are not binding upon the receiver."

On June 2, 1917, the district court of Montgomery county approved the report of its receiver, and directed him to turn over all the properties of the Kansas Natural Gas Company in his possession or under his control to this court, and this court thereupon, by order of June 5, 1917, directed its receiver to accept said properties, and ordered:

"That all administrative orders heretofore made by the district court of Montgomery county, Kan., relative to the management and operation of the properties of the Kansas Natural Gas Company by said receivers, and now in force, are hereby adopted and continued in full force and effect until the further order of this court."

No order has ever been made either by the state court of Montgomery county, or by this court, directing or authorizing the adoption of these supply contracts by the receiver, nor has the receiver of either court ever assumed to adopt them, or made application to either court to have them adopted. Such in brief is the history of the supply contracts during the period of the receivership of the Kansas Natural Gas Company in the state court of Montgomery county, Kan., and in this court, so far as relates to the adoption of said contracts by said receivers.

[1] The law applicable to such a state of facts is well settled. In such cases it is not the law that a contract shall be binding upon the receiver until it is disavowed by him, but the law is that it is not binding upon the receiver until it is accepted by him, pursuant to the order of court. Kansas City Pipe Line Co. v. Fidelity Co., 217 Fed. 187, 133 C. C. A. 181; Kansas City Southern Ry. v. Lusk, 224 Fed. 704, 140 C. C. A. 244; Peabody Coal Co. v. Nixon, 226 Fed. 20, 140 C. C. A. 446; Dickinson v. Willis (D. C.) 239 Fed. 171. My conclusion is that the supply contracts are not, and never have been, binding upon the receivers, either of the state court or federal court.

[2] Second. As to the status of the supply contracts, with reference to the Kansas Natural Gas Company, many of the contracts made with the distributing companies in Kansas contained clauses providing for an exclusive sale to the distributing company within its territory, or for an exclusive purchase by said distributing company from the Kansas Natural Gas Company, or for an indirect regulation or control by the Kansas Natural Gas Company of prices to the ultimate consumer, and oftentimes more than one of these provisions were contained in the contract. The following provision from one of the supply contracts may be taken as an example:

"While this agreement shall remain in force, the parties of the second part shall purchase of the party of the first part, all the gas necessary to supply the said city of Pittsburg, and its inhabitants, except that, in the event of the party of the first part failing to supply gas as herein provided, said party of the second part may secure gas from other sources, until the first party shall supply gas as herein provided. The party of the first part shall not supply gas to any other firm, corporation or individual, which may be a competitor of the said second party in selling and distributing gas in the said city of Pittsburg."

These contracts were attacked by the state of Kansas in an ouster proceeding in the Supreme Court of the state of Kansas, entitled "State of Kansas v. Kansas Natural Gas Company, No. 17977" (no written

opinion filed), the ground of said attack being that certain provisions of the contracts were in violation of the anti-trust laws of the state of Kansas. On April 30, 1912, an order was entered in said case by the Supreme Court of the state of Kansas, prohibiting the Kansas Natural Gas Company from carrying out such contracts, and the Kansas Natural Gas Company was ordered to remake and rewrite all of its contracts containing the objectionable clauses. Steps were taken by the Kansas Natural Gas Company to carry out this order, but the only contract in fact remade was one with the Leavenworth Light, Heat & Power Company, in September, 1912. The probable reason for lack of further action was the commencement of the receivership proceedings in both the state and federal courts, and the entry by this court of its order of October 9, 1912, in reference to said contracts, as above set forth, and the entry by the state court of the decree of February 17, 1913.

The new contract with the Leavenworth Company eliminated the exclusive purchase and sale features of the old contract; but the resulting combination contract, being made up of the remaining provisions of the old contract plus provisions of the new contract, was void for lack of mutuality. See Hutchinson Gas, etc., Co. v. Wichita Natural Gas Co. (Circuit Court of Appeals, Eighth Circuit, August 17, 1920) 267 Fed. 35.

It would seem to follow that all of the other old supply contracts in Kansas containing the objectionable clauses above mentioned were unenforceable and void (1) because they violated the anti-trust laws of Kansas (if objectionable clauses be considered as remaining a part of the same); or (2) because they lacked mutuality (if the objectionable clauses be considered as eliminated from them). This conclusion applies to the Kansas contracts in group A.

Certain others of the supply contracts contained clauses substantially as follows:

"The Kansas Company hereby gives and grants unto the agent the sole and exclusive agency to distribute, market and sell its natural gas for domestic and manufacturing purposes within the limits of said city, and said agency shall run and continue until the expiration of the life of this contract, unless sooner determined by mutual consent of the parties hereto or by breach of some of the promises, covenants and agreements of the agent herein set forth and recited; the full and faithful performance of such promises, covenants and agreements being the condition upon which this exclusive agency is granted and is to be exercised, unavoidable casualties excepted. * * *

"In consideration of the exclusive agency for the sale of its gas within the said city limits so granted by the Kansas Company to the agent, the agent covenants and agrees to and with the Kansas Company that it will not during the term of this agency handle, distribute or sell within the said city limits the natural gas of persons, partnerships or corporations other than that of the Kansas Company."

These clauses are subject to the same objections as the clauses contained in the contracts in group A, above considered, and the contracts containing these clauses came within the order of the Supreme Court of Kansas of April 30, 1912, in No. 17977.

What has been said above relative to attempted elimination of the objectionable clauses applies here also; indeed, the clauses now under

consideration are practically identical with the clauses of the contract considered in the case of Hutchinson Gas, etc., Co. v. Wichita Natural Gas Co., supra.

The conclusion as to the contracts in group A is therefore also reached as to those contracts in group B, which were made with distributing companies in the state of Kansas.

[3] All of the original contracts, with one exception, contained a clause or clauses in substance as follows:

"Whereas, the gas company is the owner of a large acreage of gas leases, with a number of gas wells thereon, all situated in the gas belt of Kansas, and desires a market for its product. * * *

"Now, this indenture witnesseth that the said gas company, in consideration of the payments, covenants and agreements hereinafter contained, on the part of the second party to be paid, kept and performed, agrees to lay and complete, or cause to be laid and completed, on or before March 1, 1906, unavoidable delays excepted, a pipe line for conveying natural gas from the said gas field of Kansas to a point at the limits of each of said towns. * * *

"However, as the production of gas from wells and the conveying of it over long distances is subject to accidents, interruptions and failures, the party of the first part does not by this contract undertake to furnish the parties of the second part with an uninterrupted supply of gas for the period named herein but only to furnish such a supply for such a period of time as the wells and pipe lines supplying gas to the parties of the second part (distributing companies) are capable of supplying, and in case of its inability to fully supply all of the cities and towns with which it is connected the gas supplied under this contract shall at all times be a pro rata share of the total deliveries of gas. And it is expressly understood and agreed by the parties of the second part that the party of the first part shall not be liable for any loss, damage or injury to the parties of the second part that may result directly or indirectly from such shortage or interruption, but said party of the first part agrees to use diligence to supply said parties of the second part with a constant and adequate supply of merchantable gas for all consumers that the parties of the second part may secure within the corporate limits of the city of Lawrence, Kansas, as the said limits now exist or may hereafter be established by law."

At the time said supply contracts were entered into the Kansas Natural Gas Company owned gas-producing properties in the state of Kansas, principally in the counties of Allen, Wilson, and Neosho; also certain gas-producing fields in Montgomery county, Kan. It does not appear from any of the contracts, with one exception, No. 28, that it was contemplated to acquire fields in Oklahoma, or to purchase gas there for the purpose of sale. There is no provision in the said contracts requiring the Kansas Natural Gas Company to furnish natural gas under said contracts absolutely and without reference to where it might be possible to obtain the supply. The fields within the contemplation of the parties, as set out in said contracts, became subsequently exhausted, on or about 1912, and it became physically impossible to furnish gas from the field, within the contemplation of the parties at the time such supply contracts were made.

While the properties of the Kansas Natural Gas Company have been operated by receivers under the direction of the courts, extensions from time to time have been made into more and more distant fields. Such extensions, however, were not made because of any provisions contained in said contracts, nor because such extensions were in the contemplation of the original parties to said supply contracts; but

such extensions have been made for the purpose of securing gas, if possible, for the consumers, and for the purpose of preventing the destruction of the value of the property in the hands of the receivers. In the case of Hutchinson, etc., Co. v. Wichita, etc., Co., supra, involving a contract containing similar provisions, the court in its opinion said:

"The contract of the Wichita Company then was that it would furnish gas as long as the Kansas fields and wells and the pipe line were capable of supplying it. By the terms of this agreement their capability to furnish this supply was a condition precedent to the existence of the Wichita Company's obligation to furnish gas at every moment after the original contract was made. If at any time that capability existed, at that time the obligation existed. If at any time the capability did not exist, at that time the obligation did not exist."

The conclusion, therefore, is that the obligations of the Kansas Natural Gas Company under said supply contracts have been discharged and terminated by reason of the failure of gas, as provided for in said supply contracts. This conclusion applies to all of the contracts in controversy excepting No. 28.

The consideration running to the Kansas Natural Gas Company in the supply contracts was dependent upon the rates to be charged to the ultimate consumers. Those rates were therefore a primary inducing cause to the making of the supply contracts, and a nullification of the rates fixed for the ultimate consumer would necessarily affect the obligation of the supply contracts. In some instances these rates for the ultimate consumer were fixed by franchise ordinances, which were claimed to be contracts between the distributing companies and the cities which they served. So far as such contract rates were attempted to be made by cities of the first class in Kansas, they were ultra vires and void. State ex rel. v. Wyandotte County Gas Co., 88 Kan. 165, 127 Pac. 639; Id., 231 U. S. 622, 34 Sup. Ct. 226, 58 L. Ed. 404. These decisions affected unfavorably the supply contracts between the Kansas Natural Gas Company and distributing companies operating in cities of the first class in Kansas and included Nos. 1, 6, 16, 19, 20, 27, and 32 in the above list.

Though cities of the second and third classes retained power to make contract ordinance rates, nevertheless, by chapter 238, Laws of 1911, Kansas, all such powers in those cities were superseded by or made subordinate to the power lodged by said statute in the Public Utilities Commission of Kansas, and since transferred to the Court of Industrial Relations.

[4] That rate contracts of public utilities are subject to legislative supervision and abrogation, except where the renunciation of such right by the state is evidenced by most clear and unequivocal terms, is well settled. State ex rel. v. Wyandotte Co. Gas Co., 88 Kans. 165, 127 Pac. 629, and 231 U. S. 622, 34 Sup. Ct. 226, 58 L. Ed. 404; Freeport Water Co. v. Freeport, 180 U. S. 587, 21 Sup. Ct. 493, 45 L. Ed. 679; Mil. Ry. v. Wis. Com., 238 U. S. 174, 35 Sup. Ct. 820, 59 L. Ed. 125; City of Pawhuska v. Pawhuska Oil & Gas Co., 250 U. S. 394, 39 Sup. Ct. 526, 63 L. Ed. 105; Producers' Trans. Co. v. R. R. Com., 251 U. S. 228, 40 Sup. Ct. 131, 64 L. Ed. 239; Union Dry Goods Co. v.

Georgia Corp., 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309. Pub. Util. Com. v. Wichita Ry. & Light Co. (C. C. A. 8th Cir., July 15, 1920), 268 Fed. 37; S. W. Mo. Ry. Co. v. Pub. Serv. Com., 219 S. W. 380; Kansas City v. Pub. Serv. Com., 276 Mo. 539, 210 S. W. 381; Ottumwa Ry. Light Co. v. City of Ottumwa (Iowa) 178 N. W. 905.

In view of the foregoing authorities it follows from the evidence in this case that the supply contracts in Kansas have all been superseded and rendered of no force by section '30, chapter 238, Laws 1911 of Kansas, and by orders of the Public Utilities Commission of Kansas and of the Court of Industrial Relations, notably by the orders of said Public Utilities Commission dated July —, 1913, and December 10, 1915, and by the order of said Court of Industrial Relations dated August 18, 1920; and the supply contracts with the Kansas City Gas Company in Missouri, and with the Joplin Gas Company, have likewise been rendered not binding by the orders of the Public Service Commission of that state, dated June 14, 1920, and September 23, 1920.

The summary of the foregoing conclusions is that none of the supply contracts above specified are binding either upon the receiver or upon the Kansas Natural Gas Company. A decree may be prepared embodying the final conclusion reached in the decision of August 7, 1920, relative to the 28-cent rate order of December 10, 1915, and also embodying the final conclusion reached in this decision relative to the supply contracts, and granting injunctive relief against enforcement of the latter.

The issues raised by the supplemental pleadings of several of the distributing companies relative to the order of the Court of Industrial Relations, dated August 18, 1920, are so distinct from the other issues in the case, and so little related thereto, that they will be reserved for separate decision and decree.