## MYRON GREEN CAFETERIAS COMPANY et al., Appellants, v. KANSAS CITY et al.

### Division One, April 8, 1922.

1. **FEDERAL CONSTITUTION: Interstate Commerce: Sale of Natural Gas by Local Company.** The retail sale of natural gas in a Missouri city, under a franchise granted by it to a Missouri corporation, is not interstate commerce, even though such gas is bought by said corporation from a corporation of another state and is delivered by the latter corporation at the city limits, in its own pipe line, which is permanently connected with the pipes of the Missouri corporation through which the latter distributes such gas to the local consumers and for which gas the latter company pays the other two-thirds of the amount received therefor from the local consumers.

2. ———: ———: ———: **City Ordinance Prohibiting Booster Pumps.**
An ordinance of such city prohibiting the use, by local gas con-
sumers in such city, of gas pumps and other devices, designed to
increase the flow of gas into their private pipes beyond that nor-
mally due to the pressure in the pipe through which the local gas
company furnishes gas to such consumers, is not invalid as an
interference with interstate commerce, in violation of Section 8
of Article I of the Federal Constitution.

3. **PUBLIC SERVICE COMMISSION LAW: Gas Companies: City
Ordinance Prohibiting Booster Pumps.** The ordinance of Kansas
City, Missouri, prohibiting the use, by local gas consumers in such
city, of gas pumps and other devices, designed to increase the
flow of gas into their private pipes beyond that normally due to
the pressure in the pipe through which the local gas company
furnishes gas to such consumers, is not invalid as an interference
with the powers of the Public Service Commission, with respect
to gas companies, as defined in the Public Service Commission
Act (Article IV, Chapter 95, Revised Statutes 1919), inasmuch
as said ordinance applies to and regulates the actions of the in-
dividual gas consumers, whose conduct endangers the life, limb
and property of others, and does not apply to, or attempt to regu-
late, the gas company.

Appeal from Jackson Circuit Court.—*Hon. Allen C.
Southern,* Judge.

AFFIRMED.

*T. A. Witten* for appellant.

(1)   The Public Service Commission having taken
over entire control of the manufacture of artificial gas,
and the sale, storage and handling in every detail of both
artificial and natural gas, in accordance with the Public
Service Commission Act, the ordinance in question is in-
operative and void.   Public Service Commission Act,
Laws 1913, sec. 69, p. 603;   State ex rel. v. Pub. Serv.
Comm., 270 Mo. 429;   Board of Education v. St. Louis,
267 Mo. 356;   Linotype Co. v. Hayes, 202 S. W. 303;
Hewitt v. Tel. Co., 172 Mo. App. 272;   Davis v. Tel. Co.,
202 S. W. 292;   State v. Looney, 97 S. W. 934;   City of
St. Louis v. Wortman, 213 Mo. 131;   Fleming v. Mexico,
262 Mo. 432;   Jewell Tea Co. v. Carthage, 275 Mo. 383;

Kansas City v. McDonald, 175 S. W. 917; Thomas Bros. v. Railroad, 188 Mo. App. 22. (2) Because the buying and selling of gas between the Kansas City Gas Company and the consumers is interstate commerce, and the ordinance which limits the amount that can be so bought and sold directly impedes and burdens interstate commerce, and is in violation of the Federal Constitution, Art. I, sec. 8, and in violation of the Federal statutes creating the Interstate Commerce Commission and defining its powers and duties, said ordinance is inoperative and void. Linotype Co. v. Hayes, 202 S. W. 303; Hewitt v. Tel. Co., 172 Mo. App. 272; Davis v. Tel. Co., 202 S. W. 292; State v. Looney, 97 S. W. 934; St. Louis v. Wortman, 213 Mo. 131; Fleming v. Mexico, 262 Mo. 432; Jewell Tea Co. v. Carthage, 257 Mo. 383; Kansas City v. McDonald, 175 S. W. 917; Thomas Bros. v. Railroad, 188 Mo. App. 22; Landon v. Public Utilities Comm., 242 Fed. 658, 245 Fed. 950; Western Union Tel. Co. v. Kansas, 216 U. S. 1; Norfolk and Western Railroad v. Pennsylvania, 136 U. S. 114; Pickard v. Car Co., 117 U. S. 34; Robbins v. Taxing Dist., 120 U. S. 489; Le Loup v. Mobile, 127 U. S. 640; Asher v. Texas, 128 U. S. 129; Stotenbroug v. Hennick, 129 U. S. 141; McCall v. California, 136 U. S. 101; Crutcher v. Kentucky, 141 U. S. 471; Buck Stove Co. v. Vickers, 126 U. S. 205; Sioux Remedy Co. v. Cope, 235 U. S. 197; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196. (3) The ordinance cannot be justified as a proper exercise of the police power of the State delegated to Kansas City. The exercise of the police power must always be "consistent with general statutes and the Constitution, both federal and state." 28 Cyc. 693, note, 71; State ex rel. v. Pub. Serv. Comm., 270 Mo. 429; Board of Education v. St. Louis, 267 Mo. 356; St. Louis v. Wortman, 213 Mo. 131; St. Louis v. Klausmyer, 213 Mo. 119; Johnson Grain Co. v. Railroad, 177 Mo. App. 194; Morgan's L. & T. K. S. S. Co. v. Board of Health, 118 U. S. 454; Crutcher v. Kentucky, 141 U. S. 47; M. K. & T. Ry. Co. v. Harber, 169 U. S. 613; Smith v. Alabama, 124 U. S. 465. (4) The

answer stated no defense and the court erred in over-ruling plaintiff's motion in arrest of judgment.

*E. M. Harber, M. A. Fyke* and *Francis M. Hayward* for respondent.

(1) (a) The Public Service Commission Act, so far as the case at bar is concerned, applies only to those who furnish natural gas for light, heat or power, but not to those who consume such gas after the same has been delivered, and consequently the exercise of the police power by a city in respect to the manner in which the consumer shall use natural gas is not trenched upon by the state law. Public Service Act, Laws 1913, secs. 67, 68 and 69, pp. 602 to 608; Ex parte Holman, 191 S. W. 1109; Roper v. Greenspon, 198 S. W. 1109. (b) But in no event can there be a conflict between the state law and the ordinance till the Public Service Commission has acted. Arkadelphia Milling Co. v. St. Ry. Co., 39 Sup. Ct. (U. S.) 237. (2) The distribution of natural gas by the Kansas City Gas Company does not constitute interstate commerce. Western Union Tel. Co. v. Foster, 113 N. E. 192; Kansas City v. Landon, 39 Sup. Ct. Rep. (U. S.) 268. Even if such distribution of natural gas by the Kansas City Gas Company were interstate commerce, still local regulations, when Congress has not acted, enacted in the exercise of the police power of the State in the interest of the public health and safety, have been upheld by the Supreme Court of the United States, notwithstanding the regulations may incidentally or indirectly affect interstate commerce. Covington Ry. Co. v. Covington, 235 U. S. 546, 548; Minnesota Rate Cases, 230 U. S. 402; N. Y., N. H. & H. Railroad v. New York, 165 U. S. 628; Lake Shore & Mich. So. Ry. Co. v. Ohio, 173 U. S. 285; Hennington v. Georgia, 163 U. S. 299; Atlantic Coast Line v. Georgia, 234 U. S. 280; Rasmussen v. Idaho, 181 U. S. 198; Smith v. Ry. Co., 181 U. S. 248; Metcalf v. St. Louis, 11 Mo. 103; Erb v. Morasch, 177 U. S. 584; Crutcher v. Kentucky, 141 U. S. 61; Smith v. Alabama, 124 U. S. 480; Nashville Ry. v. Alabama, 128 U. S. 96;

C. M. & St. P. Ry. Co. v. Solan, 169. U. S. 137; Western
Union Tel. Co. v. James, 162 U. S. 660; Western Union
Tel. Co. v. Milling Co., 218 U. S. 406; Jamison v. Gas &
Oil Co., 128 Ind. 550; Ohio Oil Co. v. Indiana, 177 U. S.
206; Oklahoma v. Nat. Gas. Co., 221 U. S. 257; Davis v.
Tel. Co., 202 S. W. 294. (3) The city had ample power
under its general welfare clause to enact the present ordi-
nance and the same is not inconsistent with any law,
State or Federal. Pars. 37 and 41, Sec. 1, Art. III, Char-
ter of Kansas City 1908; Kansas City Gunning Co. v.
Kansas City, 240 Mo. 659; St. Louis Gunning Co. v. St.
Louis, 235 Mo. 99.

JAMES T. BLAIR, J.—Appellants are users of gas
in Kansas City, and commenced this suit to enjoin the
enforcement of a city ordinance which prohibited the
use of gas pumps and other devices designed to increase
the flow of gas beyond that normally due to the pressure
in the pipe through which the Kansas City Gas Company
furnished gas to them. The Kansas City Gas Company
receives the gas from the Kansas Natural Gas Company,
which procures natural gas at points of production in
Oklahoma and Kansas and conducts it through pipes to
various towns in Kansas and Missouri, including Kansas
City, Missouri. About eighty-five per cent of the gas
comes from Oklahoma and fifteen per cent from Kansas.
That used in Kansas City is delivered to the Kansas City
Gas Company through pipes metered at the city limits,
and is by that company sold to about 60,000 consumers.
Of these about 1200 employ devices prohibited by the
ordinance in question. The Kansas Natural Gas Com-
pany is in the hands of a receiver, appointed by the Fed-
eral court in Kansas. The court fixed the price of the
gas, and the Kansas City Gas Company pays to the Kan-
sas Natural Gas Company forty per cent of its receipts
from the sale of gas in Kansas City. The Kansas City
Gas Company operates under a franchise granted by Kan-
sas City in 1906. The agreed statement of facts shows
the ordinance involved was duly passed and approved;
that respondents contend that appellants by employing

the devices in question increased the natural flow of gas to the detriment of the great body of gas users in Kansas City, and that the result of the use of such devices was to endanger the health and safety of the people of the city; that respondents were about to begin prosecution, against appellants and others, under the ordinance and would do so unless restrained; that the Federal Court has increased the franchise rates. There was testimony of experts to the effect that the use of the gas pumps and devices condemned by the ordinance tended to produce a vacuum in the pipes; that air was thereby drawn into them and that the mixture thus produced became dangerously explosive and had frequently resulted in explosions in numerous places in Oklahoma, Kansas and Kansas City, and that great injury to life, limb and property is done and threatened thereby. There is no description of any of the devices and no detailed evidence of the manner of their use. The petition raised several constitutional questions, and alleged that the ordinance invaded the field occupied by the Public Service Commission. The trial court found against appellants and dismissed the petition, and this appeal followed.

Appellants contend the ordinance is void (1) "because it is in direct conflict with the Public Service Commission Statute of Missouri, and seeks to invade and usurp the powers and functions of the Public Service Commission;" and (2) "because it is in violation (a) of the Federal statute creating the Interstate Commerce Commission and defining its powers, and (b) of Section 8, Article I, of the Federal Constitution;" and (3) that the ordinance cannot be justified as a police regulation for these reasons.

I. With respect to the question whether the ordinance is void for conflict with the Commerce Clause of the Federal Constitution, decisions in point are at hand. Appellant relies upon Landon v. Public Utilities Commission, 242 Fed. 658, 245 Fed. 950. In that case the question whether the Kansas City Gas Company's activities in selling and distributing to Missouri consumers gas delivered to it by the Kansas Natural Gas Company con-

Interstate Gas: U. S. Constitution.

stituted interstate commerce was one of the turning points
of the decision. The Kansas Public Utilities Commission
had attempted to fix rates for gas in cities in Kansas in
which the situation with respect to the purchase, recep-
tion of gas and the sale and distribution of gas to con-
sumers was essentially the same as that in Kansas City,
Missouri. It was contended by the receiver of the Kan-
sas Natural Gas Company that the rate fixed was a regula-
tion of and a burden upon interstate commerce. The
Missouri Public Service Commission was permitted to
become a party, because its powers with respect to rate
regulation under like conditions in Kansas City and St.
Joseph were likely to be affected by the decision. It took
an active part in the case. The district court held, in the
decision cited, that "the transportation of gas carried on
by the receiver is interstate commerce, and that the
character of the business inheres from the beginning of
the journey in Oklahoma to the termination thereof at
the burner tips in Kansas or Missouri," and that the
effort to fix local rates was a direct and undue burden
upon interstate commerce. This case was appealed to the
Supreme Court, and that court (Public Utilities Comm.
v. Landon, 249 U. S. 1. c. 244 et seq.) took a different view,
as follows:

"We think the trial court properly overruled the
objections offered to its jurisdiction, and nothing need
be added to the reason which it gave. [234 Fed. 152, 155.]
But we cannot agree with its conclusions that local com-
panies in distributing and selling gas to their customers
acted as mere agents, immediate representatives or in-
strumentalities of the receivers, and as such carried on
without interruption interstate commerce set in motion
by them.

"That the transportation of gas through pipe lines
from one state to another is interstate commerce may not
be doubted. Also, it is clear that as part of such com-
merce the receivers might sell and deliver gas so trans-
ported to local distributing companies free from un-
reasonable interference by the State. [American Exp.

Co. v. Iowa, 196 U. S. 133, 143; Oklahoma v. Kansas Natl. Gas Co., 221 U. S. 229; Haskell v. Kansas Natl. Gas Co., 224 U. S. 217.]

"But in no proper sense can it be said, under the facts here disclosed, that sale and delivery of gas to their customers at burner-tips by the local companies operating under special franchises constituted any part of interstate commerce. The companies received supplies which had moved in such commerce and then disposed thereof at retail in due course of their own local business. Payment to the receivers of sums amounting to two-thirds of the product of these sales did not make them integral parts of their interstate business. In fact, they lacked authority to engage by agent or otherwise in the retail transactions carried on by the local companies. Interstate commerce is a practical conception and what falls within it must be determined upon consideration of established facts and known commercial methods. [Rearick v. Pennsylvania, 203 U. S. 507, 512; The Pipe Line Cases, 234 U. S. 548, 560.] The thing which the receivers actually did was to deliver supplies to local companies. Exercising franchise rights, the latter distributed and sold the commodity so obtained upon their own account and paid the receivers what amounted to two-thirds of their receipts from customers. Interstate movement ended when the gas passed into local mains. The court below erroneously adopted the contrary view, and upon it rested the conclusion that the public commissions were interfering with establishment of compensatory rates by the receivers in violation of their rights under the Fourteenth Amendment."

The decree was that the decree of the trial court was reversed and the cause remanded. Appellant seeks to evade the force of this decision on the same facts by the contention that the Supreme Court subsequently modified its decree, entered upon the filing of the opinion quoted, and made a different order as to the hearing. This is based upon the vacation, April 28, 1919, of the original decree of date March 17, 1919. [249 U. S. l. c. 590, 591.] The order of vacation and new decree is as follows:

"In these cases it is ordered that the decree entered March 17, 1919, be vacated and decree now entered as follows: The decrees below are reversed and the cause is remanded to the trial court with directions to hear it anew and determine all the issues involved, including those arising on the several bills, cross-bills, and answers in the nature of cross-bills, in conformity with the views expressed in the opinion of this court; and to take such further proceedings as may be appropriate and consistent with such opinion. All temporary injunctions in force at the time of the entry of the decrees from which appeals were taken here shall be continued in force until otherwise ordered. The costs in this court will be paid, one-half by John M. Landon, receiver of the Kansas Natural Gas Company, and the remainder shall be paid, one-third by each of the three groups of appellants.

"(For the opinion of the court and names of counsel, see ante 236.)"

There seems to be nothing in this intended to modify the opinion the court had rendered in March. On the contrary, the new trial ordered by the new decree is required to be "in conformity to the views expressed in the opinion of this court," and the "further proceedings" were required to be "appropriate and consistent with such opinion." The Supreme Court (Penna. Gas Co. v. Pub. Service Comm., 252 U. S. l. c. 28) discussed the opinion in the Landon Case and stated what was there held, as follows:

"This case differs from Public Utilities Commission v. Landon, 249 U. S. 236, wherein we dealt with the piping of natural gas from one state to another, and its sale to independent local gas companies in the receiving state, and held that the retailing of gas by the local companies to their consumers was intrastate commerce and not a continuation of interstate commerce, although the mains of the local companies receiving and distributing the gas to local consumers were connected permanently with those of the transmitting company. Under the circumstances set forth in that case we held that the interstate movement ended when the gas passed into the local

mains; that the rates to be charged by the local companies had but an indirect effect upon interstate commerce and, therefore, the matter was subject to local regulation.''

It is clear the Supreme Court was not of opinion that the order of vacation and the entry of the decree of April 28, 1919, had affected the quoted holding in the Landon Case. It also appears that the court to which the cause was remanded had no such conception of the new decree as that now advanced by appellants in the instant case. On the retrial (Landon v. Court of Industrial Relations, 269 Fed. l. c. 415) the reasons for the order and decree of April 28, 1919, are stated, and it is shown they were made (not to affect the Supreme Court's holding on the question as to interstate commerce, but) to meet conditions which arose after the original decree, and to permit the litigation of the question whether the rates fixed by the Kansas Commission were confiscatory. The decision of the Supreme Court determines against appellants the interstate commerce issue in the instant case.

II. Appellants' remaining contention is, in substance, that the enactment of the Public Service Commission law withdrew from Kansas City the power to pass the ordinance involved in this case; that the field of the ordinance is occupied by the statute; and that the power to regulate is now vested solely in the Commission to the exclusion of the municipal authorities. No question is raised concerning the power of the Public Service State to occupy the field of regulation to Act: Conflict such an extent that the city would be preWith City cluded from enacting and enforcing an ordiOrdinance. nance like that in question. Respondents' contention is that the State has not done so, and that the ordinance is not a usurpation of power belonging to the Commission. The solution of the question depends upon a construction of certain sections of the Public Service Commission Act. The powers of the Commission are to be found in that act and are such as are expressly granted and clearly defined, and such others as are necessary

to the ''just and reasonable execution'' of the power so conferred and which, therefore, are conferred by necessary implication. [State ex rel. v. Pub. Serv. Comm., 270 Mo. l. c. 442, 443; People ex rel. Mun. Gas Co. v. P. S. Comm., 224 N. Y. l. c. 165.] Appellants contend that the ordinance in question deals with a practice the regulation of which is committed to the Commission by the act which creates that body. It is not every general statute which withdraws the police power from the city with respect to every activity connected in any way with the general subject of such statute. [Roper v. Greenspon, 272 Mo. 288.] Subsections 10 and 11 of Section 10411, Revised Statutes 1919, define ''gas plants'' and ''gas companies.'' Article IV of the Public Service Commission Act deals with the regulation of gas plants and corporations, and the first section of this article (Sec. 10476) provides that ''this article shall apply to the manufacture and furnishing of gas for light, heat or power.'' As was to be expected, the subsequent sections of the article clearly are designed for the regulation of gas plants in their character as public utilities. There is nothing in these sections or elsewhere in the act, when it is read in the light of the quoted rule, which purports to extend the powers of the Commission beyond regulations of that character. There is certainly nothing in the act which indicates that a consumer of gas comes within the scope of the Commission's power in all respects simply because he purchases gas from a utility the Commission has power to regulate as such. The use of gas pumps is not a practice of the Kansas City Gas Company, nor a service which it provides. So far as this record shows the case is that a number of the Gas Company's customers have placed in their residences or places of business a device the use of which in such places creates a condition dangerous to life, limb and property. This is the act of individual consumers and not of the company. The fact that the device is attached to a gas pipe does not extend the powers of the Public Service Commission, nor exculpate those who use the device. The ordinance assailed by appellants is

not regulatory of the activities of the Gas Company, but of the acts of individuals whose conduct endangers others. That they are consumers of gas is incidental. We are unable to see that the ordinance in any way usurps powers of the Commission.

The judgment is affirmed.    All concur.